UNITED STATES of America, Appellee,

v.

**Kenneth Michael JOHNSON, Appellant.**

UNITED STATES of America, Appellee,

v.

**Donald Roy GUNN, Appellant.**

**Nos. 76–1202, 76–1229.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1976.

Decided Aug. 27, 1976.

955

Thomas H. Rost, St. Louis, Mo., for Johnson.

Robert B. Vining, Jr., Clayton, Mo., for Gunn.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee; Barry A. Short, U. S. Atty., St. Louis, Mo., on brief.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

In March, 1976 Kenneth Michael Johnson and Donald Roy Gunn, hereinafter at times referred to as the defendants, were tried jointly before a jury in the United States District Court for the Eastern District of Missouri [1] on a charge of armed robbery of the Wellston Station of the St. Louis, Missouri Post Office in violation of 18 U.S.C. § 2114. Both men were found guilty and were sentenced to imprisonment for terms

---

1. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

of twenty-five years. Each has appealed, and the appeals have been consolidated and heard together.

The only factual issue in the case was whether the defendants were two of the three men who robbed the post office of around $700.00 during the early afternoon of January 13, 1976. Assuming the admissibility of the evidence relied upon by the government to establish the identities of the defendants as two of the robbers, the evidence of their guilt was overwhelming, and they do not contend otherwise. They urge reversal on other grounds that will be mentioned presently.

When the evidence is viewed in the light most favorable to the government, and assuming that all of the evidence was admissible, the jury could properly have found and evidently did find substantially the following facts.

The Wellston Station of the St. Louis Post Office is located at 1409 Hamilton Avenue. There are two mail boxes located on the curb in front of the post office.

At about 1:10 p. m. on January 13 three black males entered the post office. Two of those men, later identified as Johnson and Gunn, were armed with revolvers and were wearing ski masks. They approached the counter with drawn weapons, menaced the postal employees on duty, and effected the robbery. The third man, later identified as Ellis T. Hart, remained near the door of the post office. Some of the bills that were taken from the possession of Ms. Georgia Brownlee, a postal clerk, were "bait money," that is to say that before they were placed in Ms. Brownlee's cash drawer on the morning of the 13th their serial numbers had been recorded.

While the three post office employees who were on duty at the time of the robbery were able to give general, and somewhat varying, descriptions of the robbers and of their dress, none of the employees was able to make a personal identification of any of the three men after they were arrested.

After the robbery was completed, the three robbers left the building at a walking pace with Hart in the lead. As they went down the steps Johnson removed his ski mask, and Gunn lifted his mask from his face in such a manner as to convert the mask into a brown or beige colored skull cap. When the men reached the sidewalk, Hart started across Hamilton Avenue in an easterly direction. Johnson and Gunn turned to their left and proceeded north along Hamilton.

As Hart crossed the street, he was observed by Derrick White, a security guard employed by a local protective agency, who had come to the post office on a mission of his wife, and who had parked his car across the street from the post office. When White saw Hart, White had not left his vehicle.

While the robbery was in progress, the St. Louis Police Department had been alerted and Patrolman Leonard E. Reynolds was dispatched to the scene in his patrol car. Office Reynolds arrived at the post office just as the three robbers were leaving the building. Reynolds called for reenforcement, left his vehicle, stationed himself behind the mail boxes, drew his pistol and called on the men to halt. He observed the dress of the men; he observed Johnson remove his mask from his head; and he had a side view of the faces of both men from a distance of about fifty feet.

When Reynolds ordered the men to halt, all three of them broke into a run. At this point Johnson turned momentarily so as to face Reynolds, and the latter observed that Johnson was holding what appeared to be a mask, a brown paper bag, and a revolver in his right hand. Johnson turned and he and Gunn ran north along Hamilton. Reynolds again called on the men to halt and fired one shot; they continued to run, and he fired another shot striking Johnson in the leg. Johnson fell to the ground and was apprehended on the spot by Reynolds and White. Gunn ran a short distance along Hamilton and then ran west into an alley. As Gunn turned into the alley, both Reynolds and White were able to see his face.

As Reynolds and White approached Johnson, the latter was still in possession of his pistol. Reynolds ordered Johnson to throw the weapon in the street, which he did. The mask was seized as was the brown paper bag which contained the money that had been taken in the robbery. Johnson was removed to a hospital for treatment of his wound.

As stated, Gunn ran down the alley and after proceeding a short distance hid himself under the front end of a parked automobile. He was observed by Patrolman Ronald Kathman who was on the alert and patrolling in the area. Kathman ordered Gunn to come out from under the car, and Gunn complied. Kathman observed that Gunn had a surgical glove, a brown paper bag, and a brown ski mask (cap) in his left hand. A search of Gunn's person produced a loaded .38 caliber revolver, some currency, and some postal receipts.

Kathman placed Gunn under arrest, handcuffed him, placed him in the back seat of the patrol car, and conveyed him back to the post office where Reynolds and White were standing. Kathman exhibited the cap and the gun, and said to Reynolds, "Here's the cap and here's the gun. Is this the guy?" Reynolds replied in the affirmative and immediately thereafter White also identified Gunn.

Gunn was carried to the police station and was later jailed. Although a federal complaint was filed against him on January 14, he was not taken into federal custody immediately and was not carried before a United States Magistrate until January 19.

While Johnson and Gunn were captured immediately after the robbery, Hart managed to make good his escape by running down a passageway on the east side of Hamilton Avenue. However, the police received confidential information that Hart had been the third man involved in the robbery; and on the evening of January 14 White picked the photograph of Hart out of a number of photographs of black males that he had been shown by Police Officer Steven Jacobsmeyer.

By January 15 Hart was in custody of the St. Louis police, and a police line-up was conducted which was viewed by Reynolds and White, and probably by others. The line-up consisted of Gunn and Hart and three other black males; there were two men between Gunn and Hart. Reynolds and White understood that the purpose of the line-up was to determine whether they could identify the third man (Hart) who had gotten away. Both of them identified Hart. They recognized Gunn from two days before, but they were not called on to identify him in the line-up, and they did not do so.[2]

On January 21, 1976 Johnson, Gunn and Hart were jointly indicted. Thereafter they were represented by separate attorneys. They pleaded not guilty and filed pretrial motions. The only motions that need to be mentioned here are the motions for separate trials filed by both defendants pursuant to Fed.R.Crim.P. 14 and the motion of Gunn for a suppression of the identification evidence of Reynolds and White.

An evidentiary hearing on the motions was held by Judge Meredith in late February, and the record before us contains a transcript of the hearing as it related to the suppression of the identification evidence.

At the hearing both Reynolds and White testified positively that Johnson, Gunn and Hart were the three men who had fled from the post office. And they insisted that their identifications of Johnson and Gunn

2. It is not clear to us why Gunn was placed in the line-up. While he was not a subject of it as far as Reynolds and White were concerned, it may have been expected that other persons who viewed the line-up might be able to identify Gunn as one of the robbers. In that connection we note that attached to a pro se supplemental brief filed by Gunn is a letter to him, dated May 25, from an Assistant Public Defender of St. Louis which states he attended the line-up on January 15 for the purpose of seeing that the line-up was properly conducted and that the rights of Gunn as an "accused" were protected. The letter states that a copy of typed report of the line-up was being mailed to Gunn, but Gunn did not furnish us with that document or a copy of it.

were based on their own observations of the two men on January 13. They also testified that the elapsed time between their first observations of the men and Gunn's return to the post office in the custody of Officer Kathman was no longer than from three to eight minutes.

All of the defendants' pretrial motions were denied. In connection with the motion to suppress the identification evidence Judge Meredith said:

Gentlemen, there's nothing that I can see that's wrong with this identification at all. The facts are very simple and very plain. Mr. Reynolds saw Johnson and Gunn coming out of the post office and go north. They had been preceded by Hart who went east. He shot Johnson, he fell, and Derrick White, the other officer, saw Johnson fall, too. Within three to eight minutes Gunn was brought back and they asked Reynolds if this was the guy and he said that was him. And Derrick White heard that and identified him, too, and then they had a line-up the next day—it was two days later, I guess. In the meantime, Jacobsmeyer took pictures out to Derrick White, the officer, and he identified Hart as being the third man and both Derrick White and Officer Reynolds identified Hart in the line-up, and Gunn was also in the line-up, but they were not asked to identify him. So the motion to suppress identification is overruled. . . .

Thereafter, Hart pleaded guilty, and Johnson and Gunn went to trial together on March 1. They were found guilty on March 2.

There was never any question that the three men whom Reynolds and White observed to flee from the post office were the robbers. The question was whether Johnson and Gunn were two of those three men. Thus, identification of Johnson and Gunn as being two of the fugitives was tantamount to an identification of them as two of the robbers. To establish their identity the government relied on the testimony of Officers Reynolds and Kathman and that of Mr. White. The testimony of Reynolds and White was substantially the same as that which they had given at the suppression hearing.

At the conclusion of the government's case both defendants moved for a judgment of acquittal; the motions were denied. Gunn did not take the stand and called no witnesses. Johnson testified in his own behalf, and called two witnesses whose testimony did not contribute much, if anything, to his defense.

Johnson, of course, could not deny that he was the man who had been shot by Reynolds. However, in direct contradiction of the testimony of Reynolds and White, Johnson denied that he had ever been in the post office or concerned in the robbery and insisted that he had been shot by mistake. He said that on the occasion in question he was walking unarmed and peaceably along Hamilton Avenue in the direction of a store at which he intended to price some work clothes; that he observed one man crossing the street in front of him; that another man ran past him; that at this time he heard a command to halt, looked around and saw a police officer who had begun firing, and that he ran in an effort to get out of the line of fire, being hit while so doing. Apparently, he contended that it was a matter of unfortunate coincidence that he fell in the immediate vicinity of the brown bag and ski mask that have been mentioned. He denied that he had a pistol in his possession when he fell, and denied that he threw any pistol into the street at the command of Reynolds. In the course of his direct examination Johnson admitted that he had pleaded guilty to being an accessory to an armed robbery in 1970. It was developed on cross-examination that he had been charged with the substantive offense.

At the conclusion of Johnson's case both defendants renewed their motions for judgments of acquittal. The motions were denied, and the case was argued to the jury.

In the course of his argument counsel for Johnson emphasized that his client had tak-

en the stand even though it involved his admitting his prior robbery conviction. However, counsel for Johnson made no allusion to the fact that Gunn had not testified.[3]

We consider, first, the common claim of the defendants that the district court erred in overruling their pretrial motions for separate trials. As far as this appeal is concerned, those motions were based on the proposition that the government's case against one of the defendants was stronger than the case against the other, and that Johnson intended to testify and that Gunn did not so intend. Johnson urged that if he took the stand, and if the district court should prevent his attorney from emphasizing that fact lest Gunn be prejudiced, Johnson would lose the full benefit of the fact that he had been willing to testify even though in so doing he would be required to admit that he had been convicted of a felony. Gunn contended that he would be prejudiced if Johnson testified and if he did not, and that he would be prejudiced further if the district court permitted Johnson's attorney to base an argument on the fact that Johnson had taken the stand.

■ Those motions were addressed to the discretion of the trial court. *United States v. Kelley,* 526 F.2d 615, 622 (8th Cir. 1975), *cert. denied,* 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *United States v. Scott,* 511 F.2d 15, 18 (8th Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2403, 44 L.Ed.2d 670 (1975). We have given careful consideration to the record in the case and find no error or abuse of discretion in the action of the district court in refusing to grant separate trials.

■ When the motions were made initially, it could not be known definitely whether at the trial of the case either or both defendants would testify or what closing jury arguments counsel for any party would undertake to make. The govern-

ment's case against Johnson was stronger than its case against Gunn only because the former was shot and captured just outside the post office, whereas the latter was found a short distance from the post office hiding under an automobile and was brought back to the post office within less than ten minutes from the time at which he, Johnson and Hart had fled. We think that the difference between the two cases was insubstantial. The positions assumed by the defendants at the trial were not inconsistent; the exculpatory testimony of Johnson did not implicate Gunn. While Reynolds and White identified both defendants, their identification of Johnson did not amount to an identification of Gunn and vice versa. The argument of Johnson's attorney was not prejudicial to Gunn. And the experienced trial judge clearly instructed the jury that it must consider the case of each man separately, that the failure of a defendant to testify raises no presumption of guilt, and that no inference of any kind should be drawn from the fact that a defendant has elected not to testify.

■ Moreover, the motions for separate trials were not renewed at the close of the government's case or prior to the final submission of the case to the jury; neither defendant moved for a mistrial on the ground of prejudicial joinder; and no objection was made to the closing argument of Johnson's attorney. Such being the case we conclude that in any event the pretrial demands for separate trials were effectively waived. *United States v. Verdorn,* 528 F.2d 103, 106 (8th Cir. 1976); *United States v. West,* 517 F.2d 483, 484 (8th Cir.), *cert. denied,* 423 U.S. 948, 96 S.Ct. 365, 46 L.Ed.2d 283 (1975); *United States v. Porter,* 441 F.2d 1204, 1212 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 241, 30 L.Ed.2d 184 (1971).

Johnson argues that an allegedly prejudicial remark of the trial judge called for a mistrial. We disagree.

---

3. In his supplemental brief that has been mentioned, Gunn says that such an allusion was made. Gunn's statement is not supported by the transcript of the closing argument of Johnson's lawyer.

The record reflects that in the course of the direct examination of Derrick White, counsel for the government asked about the clothing that Johnson was wearing on the occasion of the robbery. Before White could answer the question counsel for Johnson made the following objection: "Your Honor, I will object. At what point in time is he talking about, when the people came out of the post office or when he was shot?" The trial judge replied, "Well, he didn't change clothes from the time he came out of the post office until he was shot."

Counsel for Johnson immediately moved for a mistrial, pointing out in that connection that it was Johnson's theory that he had never been in the post office. The motion was denied. Johnson's argument is that the remark of the trial judge amounted to an expression of the judge's opinion that Johnson was in fact one of the three men who had come out of the post office immediately after the robbery.

■ In view of Johnson's defense theory it was perhaps unfortunate that the district court made the statement that has been quoted. We think that the remark may have been invited to some extent by the language in which the objection was couched. In any event, we do not consider that this isolated remark, even if technically erroneous, was sufficiently prejudicial to call for a reversal particularly in the light of the strength of the government's case and of the strong cautionary instruction which the trial judge included in his charge.

■ Gunn argues that his initial identification by Reynolds and White was made under such suggestive circumstances that their testimony identifying him as one of the men who fled from the post office should have been suppressed. The "suggestive circumstances" were that when Gunn was brought back to the post office by Officer Kathman, Gunn was handcuffed in the police car, and that the skull cap and the gun were exhibited to Reynolds and White by Kathman who stated at the time: "Here's the cap and here's the gun. Is this

the guy?" Another circumstance mentioned is that the identification by White followed the identification made by Reynolds. In support of his argument counsel cites *Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); and *Palmer v. Peyton,* 359 F.2d 199 (4th Cir. 1966).

We are concerned here with the admissibility of the identifications made by Reynolds and White, not with the weight to be given to those identifications. We agree with the district court that the testimony in question was admissible. The cases cited on Gunn's behalf are clearly distinguishable. Of course, it was for the jury to say what weight should be given to the testimony of Reynolds and White and whether the evidence as a whole, including the testimony of the postal employees and the testimony of Officer Kathman as to the circumstances of his arrest of Gunn, was sufficient to establish the guilt of the respective defendants beyond a reasonable doubt.

Gunn also contends that as a result of collusion between local and federal officers he was not carried before a United States Magistrate until January 19, 1976, which was six days after his arrest and five days after federal charges were filed against him, and that this delay constituted a violation of Fed.R.Crim.P. 5(a) and of the due process clause of the fifth amendment to the Constitution of the United States.

■ There is no doubt that since the decision in *Anderson v. United States,* 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943), a confession obtained from a subject while being held unlawfully in state or local custody as a result of a prior "working agreement" between federal officers, on the one hand, and state or local officers, on the other hand, is not admissible against the subject in a subsequent federal trial in which he is a defendant. The rule of *Anderson* was applied to a police line-up identification of a suspect when he was being held in state custody as a result of a federal-state working agreement in *United*

*States v. Broadhead,* 413 F.2d 1351 (7th Cir. 1969), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 581, 24 L.Ed.2d 508 (1970). And, of course, after federal charges against a defendant have been filed, a failure of federal officers to bring him promptly before a federal magistrate may constitute a violation of Rule 5(a).

■ This particular contention of Gunn was not raised in the district court, but assuming that it is properly before us we find it to be without merit. The record does not reveal why Gunn was retained in local custody after federal charges were filed against him on January 14. We are convinced, however, that his continued detention by the St. Louis Police Department did not prejudice him in any way. He did not confess or make any incriminating statements; Reynolds and White did not base their identification of Gunn on the fact that they had seen him in the line-up on January 15, and he was not identified by any other person who viewed the line-up.[4]

In view of what has been said, the judgments of the district court in the cases of both defendants are affirmed.

---

**4.** As heretofore noted, Gunn filed on his own behalf a supplemental brief which we have considered to the extent that we have been able to understand the contentions advanced therein. In the light of the record before us, we think that those contentions have been covered adequately by what has been said already.