IN RE ESTATE OF JAMES A. WALLER.
FRIDA WALLER, APPELLEE, v. CHARLES T. DICKINSON, ADMINISTRATOR, APPELLANT.

FILED JANUARY 24, 1928. No. 24823.

*Charles T. Dickinson, pro se.*

*J. J. Friedman, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

DEAN, J.

James A. Waller and Frida Durkran, both over 60, were married June 1, 1922, and from thence for about a year they lived together in Omaha. Both of the parties had been married before and both had children by the former marriage. December 31, 1923, Mrs. Waller obtained a decree of divorce on the ground of extreme cruelty, and under the decree of divorce the defendant paid $1,000 to her as alimony and all the costs and $150 as counsel fees. All payments were made within the time designated in the decree. The court decreed, however, that the alimony, when paid, "shall be in lieu of all dower or other right which the plaintiff has or claims to have in the defendant's

property." February 12, 1924, or less than two months after the decree of divorce was rendered, James Waller died. The plaintiff now contends that she is entitled to a widow's share of the Waller estate which, as shown by a stipulation, is of the approximate value of $22,000.

By his former marriage Waller had only two children, namely, Mrs. Bell Miller, 42, and Mr. James E. Waller, 40, both residents of Anton, Colorado. Charles T. Dickinson, as administrator, contends that the above-named daughter and son of Waller are the decedent's sole heirs at law and are entitled to all of the Waller estate, and that Mrs. Waller, the plaintiff, is entitled to no part of the estate except that which she had already recovered in the divorce suit. The county court found against the administrator and he prosecuted an appeal to the district court.

On appeal the judgment of the county court was affirmed, and under a decree dated March 19, 1925, the plaintiff was allowed to participate in the distribution of the estate in the following amounts namely, $100 a month for support for one year from the date of Waller's death, and $500 in lieu of homestead, and $200 in lieu of personal property. The court also found that the plaintiff "was entitled to her distributive share in the property of the deceased as his widow." From the decree of the district court, the defendant administrator has prosecuted an appeal to this court.

The record discloses an antenuptial contract which was executed by the parties. From this instrument it is made to appear that, if Waller's wife survived him, she should be paid from his estate $1,000 within six months after his death in full of all rights of dower, distributive share or other interest in and to his estate.

The defendant, Charles T. Dickinson, designated as the "administrator with the will annexed" of the Waller estate; directs attention to the fact that the antenuptial agreement in express terms also provides that, if either party should obtain a divorce or if the plaintiff should refuse to live with him as his wife, the provision therein made for

the payment of $1,000 to her shall be null and void, and that Waller's estate shall be thereby relieved from such payment or any part thereof. The administrator admits the marriage, but pleads the fact that the divorce was granted December 31, 1923, and insists that the decree became final the 30th day of June, 1924, and that the applicant is not, therefore, the widow of the decedent.

Clearly the argument of counsel is not sound in respect of the finality of the decree. Under the facts and the law, the decree could not become final until the expiration of six months after the rendition of the decree of divorce. Section 1555, Comp. St. 1922, so far as applicable to the facts before us, among other provisions, contains this: "A decree of divorce shall not become final or operative until six months after trial and decision." In the present case Mr. Waller died less than two months after the divorce decree was rendered. Under our decisions in like cases, the plaintiff, by reason of the death of Waller within six months after the divorce, became restored to all her marital and property rights in Waller's estate, and from the fact that the decree of divorce never became final she is the surviving widow of the decedent.

True, the plaintiff signed the antenuptial agreement, but the court found that it was procured by fraud and the evidence supports the finding. The antenuptial agreement consists of more than two full pages of legal cap, and was written in English. Plaintiff, then a recent arrival from Germany, could neither read nor write nor understand the English language and did not know what her lawful marriage rights were at the time. She testified that counsel for Mr. Waller read the contract to her, but that she understood no part of what he read nor what they were talking about. The language of the agreement is somewhat involved and intricate and to a layman it would perhaps be in part meaningless. When interrogated in respect of the time when she was told about the contents of the contract, plaintiff answered: "After they went out of Mr.

Dickinson's office and went to Brandeis. Q. Was that after the contract was signed? A. Yes, sir."

The antenuptial agreement appears to be unfair and unjust in its provisions as they affect the marital rights of Mrs. Waller. The weight of the evidence sustains this view. In cases in this class the rule is that it is the court's bounden duty to carefully examine the contract and see that no injustice is done to either party. And more especially should this beneficent rule be applied for the protection of the ignorant, the aged and infirm, or one of tender years, or a person having an imperfect understanding or no understanding at all of the language in which the instrument is drawn.

The administrator argues that, when the plaintiff accepted the final instalment of the $1,000 under the antenuptial agreement, she was thereby estopped from prosecuting her claim to participate in the estate of Waller as his widow. But it appears that before Waller died he had paid but one instalment of alimony, and that the plaintiff was in Chicago, living with some relatives, when the second instalment was paid to her, and she did not then know that he was dead, nor did she find out that he was dead until some time after the final instalment had been paid. When she learned of Waller's death she applied to the county court of Douglas county to have her status recognized as Waller's widow, and tendered back the $1,000 alimony as a credit on her distributive share of the estate, and made application to have such statutory allowances as the law provides for a surviving spouse. And the trial court rightfully recognized and established her rights in the premises.

The question in respect of the rights of the respective parties, and upon whom rests the burden of proof under the terms of an antenuptial agreement, under section 1555, Comp. St. 1922, is well settled in this jurisdiction; and, under the decisions, the burden is on the party seeking to establish the agreement. In the present case the Waller

estate relies upon the agreement for its defense against liability; hence, the burden rested on the defendant estate.

In *Holmberg v. Holmberg,* 106 Neb. 717, we said: "Where a divorce was granted and one of the parties died before the expiration of six months thereafter, such divorce decree never became effective, and as to such divorce the action abated." And in the body of the *Holmberg* opinion this language is used: "Section 1606, Rev. St. 1913 (now section 1555, Comp. St. 1922) provides that the decree of divorce shall not become operative for six months after trial and decision, except for purpose of review or appeal, and if no such proceedings have been instituted the district court may at any time within six months vacate or modify its decree. The cause of action for divorce not surviving, it abated at the death of the husband."

In *In re Estate of Enyart,* 100 Neb. 337, this rule was adopted by the court: "Where the provision made for the intended wife by an antenuptial contract is grossly disproportionate to the interest in the prospective husband's estate which the intended wife would acquire by operation of law in case a marriage took place, the burden rests upon those claiming the validity of the contract to show that a full and fair disclosure was made to her before she signed it of the extent and value of the property, or that she was aware to all intents and purposes of the nature, character and value of the estate which she was relinquishing if the marriage took place."

That good faith is the cardinal principle in an antenuptial contract is the apt observation of a writer on this subject. He goes on to say that, if the provision made in the contract for the prospective wife is unreasonably disproportionate to the husband's financial worth, the presumption of designed concealment is raised, and the burden of disproving the charge rests upon the husband. 21 Cyc. 1251; *Warner's Estate,* 207 Pa. St. 580; *Russell v. Russell,* 60 N. J. Eq. 282.

It plainly appears to us that Waller wickedly availed himself of the ignorance of his intended wife, and of her

lack of understanding of the English language, and her lack of information in respect of the office of the antenuptial agreement, and thereby perpetrated a grossly outrageous fraud that no court, under the established facts, will perpetuate by its decree. The money which Waller wrongfully induced the trustful plaintiff to accept under the agreement is a mere bagatelle in respect of property rights, as compared with the property rights which would have been hers, as his widow, under the marriage laws of this state, but for the antenuptial agreement in suit.

It may be noted that the agreement in suit was evidently prepared by Waller for a former intended wife with whom he had apparently been negotiating for a marriage. The name of the former intended appears as the second party to the contract eight or ten times in the space allotted for the prospect that he formerly had in mind. In the same agreement, which was signed by the plaintiff, and upon which the defendant estate bases its claim, the name of Mrs. Frida Durkran, the plaintiff here, was signed in every space above the erased name of the former intended. From this it fairly appears that Waller was no novice in his search for a helpmeet.

In respect of the $1,000 that came into the hands of plaintiff from the Waller estate, the plaintiff expresses a willingness, in order to do equity, that the $1,000 may be charged against her share of the estate to which the court's decree finds she is entitled. But we do not think the plaintiff should be made to suffer on the ground that she accepted the second instalment of the $1,000 under the facts herein pointed out, in view of her offer to tender the $1,000 alimony back to the estate on the condition above noted.

In view of the always significant fact that the trial court saw and heard the witnesses and observed their demeanor upon the witness-stand and had a better opportunity to pass upon the weight of the evidence, it is not for us to say that the court erred in its judgment. *Greusel v. Payne,* 107 Neb. 84, and cases there cited.

Finding no reversible error, the judgment of the district

court is modified and affirmed, and remanded, with directions that the sum of $1,000 heretofore paid to plaintiff be deducted from her share of the estate.

AFFIRMED AS MODIFIED.