**UNITED STATES of America, Appellee,**

v.

**Gilbert FISHER, Appellant.**

**Nos. 877, 879, Dockets 74–2684, 75–1001.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1975.

Decided June 30, 1975.

Fred L. Wallace, New York City, for appellant.

Kenneth R. Feinberg, New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., Lawrence Iason, II, and Lawrence S. Feld, New York City, of counsel), for appellee.

Before FRIENDLY and FEINBERG, Circuit Judges, and LASKER, District Judge.*

LASKER, District Judge.

Gilbert Fisher appeals his conviction on a four count indictment charging eva-

* Of the United States District Court for the Southern District of New York, sitting by designation.

sion of personal income taxes for the years 1967 through 1970, in violation of 26 U.S.C. § 7201. Fisher's first trial in September, 1974, before Judge Edward Weinfeld in the Southern District of New York, ended in a hung jury. At the second trial which began November 4, 1974, the jury returned a guilty verdict on all counts. Fisher was sentenced to concurrent fifteen month terms of imprisonment on each count and fined $10,-000.

The Government used the specific cash expenditure method of proof to establish that during the tax years in question Fisher had accumulated large amounts of unreported income from an illegal gambling business. The Government presented witnesses who testified that Fisher attempted to prevent discovery of his actual income by using nominees to purchase items for him. Although Fisher raises a host of issues on appeal, the only one which merits extended consideration concerns the competency of one of the witnesses who testified against him.

## I.

The major witness for the Government was Rosalie Fisher. At the first trial, the Government offered in evidence the Nevada divorce decree which appellant had obtained against Mrs. Fisher on July 21, 1972, and called her as a witness, both without objection by defense counsel. Immediately prior to the commencement of the second trial, however, Fisher moved to suppress the testimony of Mrs. Fisher. He asserted that an appeal taken by her from the Nevada decree dissolved the finality of their divorce and that, because the Fishers were therefore still married, Mrs. Fisher's testimony was barred by the spousal privilege. Judge Weinfeld denied the motion on the grounds that no privilege existed[1] and that in any event Fisher had waived

it by his failure to object at the first trial.

The privilege of a party against the use of a spouse's adverse testimony in federal criminal trials is governed by Rule 26, Federal Rules of Criminal Procedure, which reads:

"In all trials the testimony of witnesses shall be taken orally in open court, unless otherwise provided by an act of Congress or by these rules. The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."

At common law and as applied by federal courts, the spousal privilege continues only for the duration of the marriage; divorce removes the bar against testifying.[2] *Pereira* v. *United States,* 347 U.S. 1, 7, 74 S.Ct. 358, 98 L.Ed. 435 (1954); Wigmore, Evidence § 2237 (McNaughton rev. 1961). Appellant asserts that the fact that an appeal from a final divorce decree has been pending since May, 1974 restores the marital relationship, but cites no authority for the proposition under Nevada Law or otherwise. Indeed, a reading of the relevant Nevada statutes suggests the contrary, for a decree of divorce granted in Nevada by a court of competent authority "fully and completely dissolve[s] the marriage contract as to both parties." Title 11, Nev.Rev. Statutes § 125.130. Moreover, although no state statute specifically covers the effect of a pending appeal on the finality of a divorce decree, an appeal in Nevada does not in general abate the force of a judgment absent a stay pending appeal. Rule 8(a), Nev.R.App.Proc. Authority under the law of other states is at odds with Fisher's contention. *E. g.,*

---

1. Fisher had also asserted the privilege against admission of confidential communications between spouses. He does not argue on appeal that the denial of this privilege was error.

2. The particular privilege asserted here, which bars adverse testimony by a spouse, is to be distinguished from the privilege against disclosure of confidential communications between spouses, which is not dissipated on termination of the marriage. See Richardson, Evidence § 455; McCormick, Evidence § 146.

*Sullivan* v. *Commissioner of Internal Revenue,* 256 F.2d 664, 667–668 (4th Cir. 1958) (Maryland); *Hudson* v. *State,* 295 So.2d 766, 769–770 (Miss.1974).[3] However, we do not view the technical finality of the divorce decree as controlling the issue before us, for regardless of the answer to the question whether the appeal from a final decree of divorce reinstates the spousal privilege, we decline to stretch the assertion of the privilege to the circumstances in the present case.

■ The rule that the spouse of a party to an action is totally disqualified as a witness was firmly established at common law by the second half of the seventeenth century. Wigmore, Evidence § 2227. The mystical and religious foundations of the privilege [4] have long since eroded, and the once absolute disqualification of a spouse has been narrowed to the present rule which only forbids testimony by one spouse which is adverse to the other spouse. *Funk* v. *United States,* 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933). The sole surviving rationale for the privilege is the belief that the trust and confidence between spouses should not be betrayed, and that the policy of fostering family stability benefits both the family unit and the public. *Hawkins* v. *United States,* 358 U.S. 74, 77, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958); *Stein* v. *Bowman,* 13 Pet. 209, 38 U.S. 209, 10 L.Ed. 129 (1839), citing *Aveson* v. *Kinnard,* 9 East. 192; see *United States* v. *Termini,* 267 F.2d 18, 19 (2d Cir. 1959); *United States* v. *Walker,* 176 F.2d 564, 568 (2d Cir.), *cert. denied,* 338 U.S. 891, 70 S.Ct. 239, 94 L.Ed. 547 (1949).

In *Hawkins, supra,* the Supreme Court was faced with the question whether the spousal privilege should be abolished. The Court exercised its authority under Rule 26, Federal Rules of Criminal Procedure, to "interpret" the privilege and declined to discard it. Although the *Hawkins* Court acknowledged that adverse testimony by one spouse against another is in itself often strong indication that the marriage is unsalvageable, it pointed to successful attempts by courts in achieving conciliation among family members to demonstrate that some apparently broken relationships can be saved and, in view of those efforts, was reluctant to abandon a rule honored through several centuries. 358 U.S. at 78, 79 S.Ct. 136. Nevertheless, the Court clearly did not intend to preclude reevaluation of its holding in future cases, for it stated:

" . . . this decision does not foreclose whatever changes in the rule may eventually be dictated by 'reason and experience.'" 358 U.S. at 79, 79 S.Ct. at 139.

■ We are aware, as was the Court in *Hawkins,* of vociferous criticism which has characterized the rule as an archaic residue of discarded dogma and an attempt to foster familial harmony which is often more apparent than real. See, e. g., *Hawkins* v. *United States, supra,* 358 U.S. at 81, 79 S.Ct. 136 (Stewart, *J.* concurring); *United States* v. *Termini, supra,* 267 F.2d at 20; *Yoder* v. *United States,* 80 F.2d 665 (10th Cir. 1935); McCormick, *Evidence* 145–146 (2d Ed. 1972); Comment, 17 U.Chi.L.Rev. 525,

---

3. We also note that Rule 803(22), Federal Rules of Evidence, which permits the admission into evidence of a prior judgment of conviction in certain circumstances, specifically states: "The pendency of an appeal may be shown but does not affect admissibility." See also *Roberson* v. *Connecticut,* 501 F.2d 305, 308 (2d Cir. 1974) (parole may be revoked on the basis of a conviction still on appeal; *United States* v. *Soles,* 482 F.2d 105, 107–8 (2d Cir.) *cert. denied,* 414 U.S. 1027, 94 S.Ct. 455, 38 L.Ed.2d 319 (1973) (prior conviction may be used for impeachment even though still on ap-

peal); Rest. of Judgments 2d, § 41, comment f, Tentative Draft No. 1, March 23, 1973 (judgment is "final" even though an appeal is pending).

4. See Coke, A Commentarie Upon Littleton 6B (1628) (" . . . a wife cannot be produced either for or against her husband, . . . [for they are two souls in one flesh.]") At common law, a married woman had no independent legal status apart from that of her husband.

530 (1950). But the government has not argued for total rejection of the privilege, and we thus need not consider whether conditions have so changed since 1958 as to warrant an inferior court reconsidering the issue decided in *Hawkins.* Rather, viewing the matter before us in the light of "reason and experience," as Rule 26 instructs us to interpret the privilege, we believe that to permit appellant to assert the privilege in the present case could not possibly achieve the intended benefit of the rule and would serve only to thwart common sense.

Appellant married Rosalie Fisher in 1942. They have had no children and have not cohabited since 1964. Fisher does have two children by another woman, Bernice Duncan, one born in 1962 and another a year later. He and his parents built a home for them in 1967 and Fisher has been living with Miss Duncan for some time. He subsequently sued his wife for divorce and was granted a final decree in 1972. At the divorce proceedings he testified that there was "no chance of reconciliation," and at his second trial Fisher's defense counsel, attacking Rosalie Fisher's anticipated testimony, asserted "He rejected her. They have been married for some time and now he is remarried and the father of two wonderful children . . ." Trial transcript at page 36.

However optimistically the Court in *Hawkins* viewed conciliation efforts by courts in general, there is no reason whatever to believe that the pending appeal by Mrs. Fisher from the divorce decree will spark successful attempts to save this marriage[5] and there is accordingly no justification for applying the spousal privilege.

■■■ An additional reason for the refusal to permit appellant to assert the privilege is his failure to object to the Government's use of Mrs. Fisher as a witness at the first trial. The spousal privilege is waived by failure to object when the spouse is called to the stand. *Peek v. United States,* 321 F.2d 934, 943 (9th Cir. 1963), *cert. denied,* 376 U.S. 954, 84 S.Ct. 973, 11 L.Ed.2d 973 (1964); *Olender v. United States,* 210 F.2d 795, 800 (9th Cir. 1954); Wigmore, Evidence § 2242. Fisher contends that he first learned of the pending appeal the night before the commencement of the second trial and that his earlier failure to object was not a "knowing" waiver that precluded him from later asserting the privilege. *Peek v. United States, supra,* 321 F.2d at 943–944. However, the trial judge had every right to disbelieve Fisher since the notice of appeal in the Nevada action was filed on May 28, 1974 and became a matter of public record three months before Fisher's first trial began. Moreover, a copy of the appeal was served on Fisher's counsel in the divorce action on May 3, 1974. Fisher does not contend that his ignorance of the pendency of the appeal was due to any negligence on the part of his counsel

5. In *United States* v. *Walker,* this court cautioned against a case by case determination as to whether a defendant should be permitted to assert the spousal privilege, and stated:

"[It is neither] practicable [nor] desirable to make the decision dependent upon the judge's conclusion that in the instance before him the marriage has already been so far wrecked that there is nothing to save . . . The question will always arise in the progress of the trial; it must be decided at once; and its answer will introduce a collateral inquiry likely to complicate the trial seriously." *United States* v. *Walker, supra,* 176 F.2d at 568.

In addition, the court in *Walker* stressed that any change in the nature of the privilege should be made either by Congress or after "an overwhelming general acceptance by the states of abolition of the privilege." *Id.*

However, *Walker* was decided nine years before *Hawkins,* which gave the courts greater latitude to review the propriety of the assertions of the spousal privilege than existed at the time of Judge Learned Hand's opinion in *Walker.* See *Hawkins* v. *United States, supra,* 358 U.S. at 79, 79 S.Ct. 136. Upon such a review we find that when evidence that a marriage is in fact destroyed is as conclusive as it is in the present case, recognition of this fact by the trial judge will neither complicate nor delay the progress of a trial.

and his alleged failure to learn of the appeal until November 3, 1974, cannot excuse his failure to object to Mrs. Fisher's testimony at the first trial.

We therefore conclude that, quite apart from the lack of merit in the argument concerning Mrs. Fisher's appeal, it was proper to decline to permit Fisher to assert the spousal privilege both because he waived his right to do so and because, even if there had been no waiver, the privilege does not extend to a "marriage" so obviously destroyed as the one here. In so holding we stress that a case by case determination of the applicability of the privilege is appropriate only where the undisputed evidence that the marriage is beyond salvation is so conclusive that no extended collateral inquiry is necessary and the trial will not be complicated or delayed by the determination.

## II.

■ The other issues which Fisher raises have even less merit. Fisher contends that the district judge abused his discretion when he refused to grant a continuance for the second trial beyond November 4, 1974. However, there is no basis in the record for the claims that the judge's decision was motivated by bias, and in any event the month and a half hiatus between trial certainly afforded defense counsel sufficient time to prepare for this relatively uncomplicated trial.[6] In sum, Judge Weinfeld properly exercised his discretion in denying the request for a continuance. *See Ungar* v. *Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *United States ex rel. Lucas* v. *Regan,* 503 F.2d 1, 3 (2d Cir. 1974).

■ Fisher's further assertion that the Government failed to prove a prima facie case that he used nominees to make expenditures in his behalf is frivolous. Appellant ignores the documentary evidence and the testimony of Government witnesses which established, for example, that Rosalie Fisher paid all bills for her and appellant with money Fisher supplied, that Fisher purchased cars for Mrs. Fisher and Bernice Duncan although they were the owners of record, and that Fisher paid for the home in New Jersey despite the fact that his parents held title to the property.

■ Fisher's argument that the Government failed to establish a "reasonably certain opening net worth" and to eliminate the possibility of non-taxable sources of income is equally without merit. As noted earlier, the Government prosecuted the case on a cash expenditure theory, not a net worth theory. The court in *Taglianetti* v. *United States,* 398 F.2d 558, 562 (1st Cir. 1968) distinguished the two methods as follows:

> "The net worth method involves the ascertaining of a taxpayer's net worth positions at the beginning and end of a tax period, and deriving that part of any increase not attributable to reported income. This method, while effective against taxpayers who channel their income into investment or durable property, is unavailable against the taxpayer who consumes his self-determined tax free dollars during the year and winds up no wealthier than before. The cash expenditure method is devised to reach such a taxpayer by establishing the amount of his purchases of goods and services which are not attributable to the resources at hand at the beginning of the year or to non-taxable receipts during the year."

In the present case, the Government introduced evidence demonstrating that in 1967 Fisher had $30,000. in bank accounts in the name of Rosalie Fisher and his two children by Bernice Duncan. Mrs. Fisher testified that as of January, 1967 this constituted all the assets that she and the appellant possessed. The proof here made "clear the extent of any

---

6. Fisher decided to substitute attorneys on October 4, 1974 but new counsel still had one month in which to prepare for trial.

contribution which beginning resources or a diminution of resources over time could have made to expenditures." *Taglianetti v. United States, supra,* 398 F.2d at 565.

Such proof satisfies the requirement in *Holland* v. *United States,* 348 U.S. 121, 132, 75 S.Ct. 127, 134, 99 L.Ed. 150 (1954), of "the establishment, with reasonable certainty, of an opening net worth." *Taglianetti* v. *United States, supra,* 398 F.2d at 564; *Ford* v. *United States,* 210 F.2d 313 (5th Cir. 1954), *cert. denied,* 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956).[7] Fisher argues, however, that he had a "cash hoard" of $193,000., which had existed prior to 1967, in a safe deposit box belonging to Rosalie Fisher. However, the Government presented proof at trial to demonstrate that this money did not exist or that, if it did, it had not been depleted as of 1972. In either event the existence of this cache was an issue of fact which the jury apparently rejected. The Government is not required to negate all possible sources of non-taxable income, *United States* v. *Massei,* 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958), and Fisher's theory does not in any way establish that the Government's showing of opening resources was insufficient.

■ Finally, Fisher contends that the district court erred in permitting the Government to introduce evidence of appellant's expenditures for property located in New Jersey which was placed in trust by Fisher's parents for his children, arguing that the trust instrument must be presumed valid on its face. We find no error in the ruling because the validity of the trust instrument is irrelevant to the appropriate question: that is, whether Fisher paid for the property.

The judgment is affirmed.

---

7. In *Holland* v. *United States,* the Government prosecuted on a net worth theory of proof; *Taglianetti* v. *United States* involved a prosecution under the cash expenditure theory. The *Taglianetti* court properly quoted from *Holland* as to the requirement that the Government establish a reasonably certain net worth, however, because such proof is necessary under either theory. *E. g., Dupree* v. *United States,* 218 F.2d 781 (5th Cir. 1955); *United States* v. *Caserta,* 199 F.2d 905, 907 (3d Cir. 1952). The major distinction, as noted above, is that the quantum of proof required under the cash expenditure theory, as distinguished from the net worth theory, is the reasonable showing of the available sources of funds during the years in question rather than a formal net worth statement. *Dupree* v. *United States, supra; Ford* v. *United States,* 210 F.2d 313 (5th Cir. 1954), *cert. denied,* 352 U.S. 833, 77 S.Ct. 49, 1 L.Ed.2d 53 (1956).