UNITED STATES of America, Appellee,

v.

Levon BROWN, a/k/a Robert L. Dennis, Daniel Clincy, a/k/a Abdullah Shabazz, Appellants.

Nos. 79–1185, 79–1194.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1979.

Decided Aug. 16, 1979.

Rehearings Denied in No. 79–1194 Sept. 11, 1979 and in No. 79–1185 Oct. 4, 1979.

Robert W. Thompson, of Rickert & Thompson, Reinbeck, Iowa, for appellant Brown.

Stephen J. Rapp, of Gottschalk & Gilliam, Cedar Falls, Iowa, for appellant Clincy.

James H. Reynolds, U. S. Atty., Cedar Rapids, Iowa, for appellee.

Before HEANEY and STEPHENSON, Circuit Judges, and. MARKEY,* Chief Judge, United States Court of Customs and Patent Appeals.

* HOWARD T. MARKEY, Chief Judge,. United States Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.

1. Clincy asserts that his name has been changed to Abdullah Shabazz.

2. 18 U.S.C. § 2 provides in pertinent part: "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

MARKEY, Chief Judge.

Brown and Clincy[1] appeal their conviction by jury of transporting in interstate commerce a false and forged security and a counterfeiting device, in violation of 18 U.S.C. §§ 2 and 2314[2] in a trial before Chief Judge Edward J. McManus. We affirm.

### Background

Brown and Clincy were residents of Minneapolis, Minnesota during 1977 and 1978. On May 1, 1978, Clincy and Barbara Knox opened a checking account at the Riverside Community State Bank in Minneapolis, in the name of Knox Contracting Enterprises, Inc. (Knox Enterprises) with Knox as the sole authorized signator. That account was closed on June 5, 1979, the account balance being transferred into Knox's personal checking account. Knox later told the bank that some Knox Enterprises checks had been stolen. When those checks were presented to the bank, it refused them because of Knox's statements and her affidavits that the signatures on the checks were forgeries.

Clincy and Knox were married by a judge in Minneapolis on May 16, 1978. Two weeks later Clincy, Brown, and others drove to Mississippi via Iowa. After a short stay in Mississippi, Brown and Clincy returned to Iowa.

Evidence indicated that Brown and Clincy, traveling together, visited Jackson, Mississippi, Coon Rapids, Minnesota, Detroit, Michigan, and Chicago, Illinois. In each of these cities, Brown or Clincy opened a bank account, by depositing either a personal check or a stolen Knox Enterprises check,

18 U.S.C. § 2314 provides in pertinent part: "Whoever, with unlawful or fraudulent intent, transports in interstate . . . commerce any falsely made, forged, altered, or counterfeited securities . . . knowing the same to have been falsely made, forged, altered, or counterfeited; or . . . with unlawful or fraudulent intent, transports in interstate . . commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security . . . Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

and then made some and attempted other withdrawals before the deposited check was returned for lack of funds, etc.

The incidents leading to Brown's and Clincy's arrests occurred in Waterloo, Iowa. On August 1, 1978, Clincy opened a personal savings account at the National Bank of Waterloo, depositing $10.00 in cash and $650 by check drawn on his personal account at the National Bank of Detroit. On August 8, he deposited a $6,986.80 check drawn on Knox Enterprises. He made numerous withdrawals from the account in early August. The National Bank of Waterloo was informed by the Minneapolis bank that the Knox Enterprises check was stolen and forged. The Detroit Bank returned the personal check because it was drawn on a closed account. The Waterloo police were notified and told the bank to sound a silent alarm if Clincy or anyone else attempted another withdrawal. On August 30, 1978, Clincy made that attempt, the alarm was sounded, and Clincy was arrested. Brown, who had earlier attempted a similar scheme at another bank in Waterloo, was arrested August 31.

Brown and Clincy were charged with the state offense of false use of a financial instrument. Iowa Code § 715.6 (Supp.1977). On November 22, 1978 Brown and Clincy were charged in a federal complaint with transporting in interstate commerce a falsely made or forged security in violation of 18 U.S.C. §§ 2 and 2314. On December 1, 1978, the pending state charges were dismissed at the state's request.

On December 19, 1978 a four count federal indictment was returned.[3] Judge McManus granted a motion to dismiss as to count II and denied it as to counts I, III, and IV. The jury returned a verdict finding Brown and Clincy guilty of all three remaining counts. The jury found a third co-defendant innocent. Post-trial motions were denied.

*Issues*

Brown seeks reversal because of Judge McManus': (1) refusal to grant a mistrial and order subsequent separate trials in view of Clincy's courtroom outbursts observed by the jury; (2) refusal to dismiss for insufficient evidence; (3) refusal to grant a severance; (4) admitting evidence of other alleged crimes; and (5) admitting evidence lacking an established chain of custody.

Clincy seeks reversal for reasons (2) through (5), and because of Judge McManus': (6) refusal to dismiss the indictment as not speedily brought; (7) refusal to dismiss the indictment as lacking probable cause for his arrest; (8) admission of bank records obtained without proper legal process; (9) failure to strike testimony of his wife and a bank employee's testimony about his wife's affidavit; and (10) retaining a juror on the panel after evidence of juror communication with a federal marshall.

## OPINION

### (1) *Clincy's Courtroom Conduct*

 Judge McManus instructed the jury that Clincy's behavior should not be considered in deciding guilt or innocence of the other two defendants. In *United States v. Smith*, 578 F.2d 1227, 1236 (8th Cir. 1978), involving similar circumstances, this court held that cautionary instructions and removal of the disruptive defendant from the courtroom were protections sufficient to prevent prejudicial impact on the other defendants.

That the jury found one of Clincy's co-defendants innocent reflects the absence of a prejudiced outcome in this case. The refusal to grant a mistrial and a severance reflected no abuse of discretion by Judge McManus.

---

**3.** Counts I, II, and III charged Brown and Clincy with violation of §§ 2 and 2314, by transporting in interstate commerce three falsely made and forced securities, *i. e.*, bank checks, knowing them to have been falsely made and forged. Count IV charged Brown and Clincy with violation of §§ 2 and 2314, by transporting in interstate commerce an article used in counterfeiting, *i. e.*, one Paymaster check protector.

### (2) *Insufficient Evidence*

■ The standard of review was well stated by District Judge Paul Benson, writing for this court in *Durns v. United States*, 562 F.2d 542 (8th Cir.), *cert. denied*, 434 U.S. 959, 98 S.Ct. 490, 54 L.Ed.2d 319 (1977):

> On appellate review of the sufficiency of the evidence, the court must view the evidence in the light most favorable to the verdict rendered. It must accept as established any and all reasonable inferences from the evidence that tend to support the jury's verdict. The evidence need not "exclude every reasonable hypothesis except that of guilt [; it is enough] that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." Furthermore, because circumstantial evidence is intrinsically as probative as direct evidence, the same standard applies where a conviction rests entirely on circumstantial evidence.

*Id.* at 545–46 (citations omitted).

Evidence presented at the trial was sufficient for the jury to have concluded that it established the elements of the charged offense under 18 U.S.C. § 2314, *i. e.*, transport of securities in interstate commerce with unlawful, fraudulent intent and knowledge that the securities had been falsely made or forged. Bank officials and cashiers testified that Clincy and Brown deposited out-of-state checks in newly opened accounts in two Iowa banks, and that they attempted withdrawals from those accounts.

■ The necessity of sending the deposited check through interstate banking channels for collection establishes the interstate transportation element of the charge. *United States v. Gray*, 531 F.2d 933, 934–35 (8th Cir.), *cert. denied*, 429 U.S. 841, 97 S.Ct. 117, 50 L.Ed.2d 110 (1976). The jury was entitled to draw from the testimony of the bank officials and cashiers an inference of unlawful and fraudulent intent on the part of Brown and Clincy, whose presumed expectation that the banks had not yet learned that those checks were drawn on closed or insufficiently funded accounts proved to be mistaken with respect to the Iowa Banks.

■ The evidence that checks drawn on closed or insufficient accounts in another state were deposited in two Iowa banks, and that withdrawals were attempted before those checks might be processed, constituted sufficient circumstantial evidence of a continuing scheme or plot to allow a jury to conclude, in the light of common sense and every day experience, that Brown and Clincy knew those checks had been falsely made or forged.

■ Brown says there was no direct proof that he personally passed a forged check, ignoring the provision of 18 U.S.C. § 2 that whoever "aids or abets" an offense against the U.S. is punishable as a principal. The testimony that Brown and Clincy travelled together from mid-May until their arrest in late August, in a continuing scheme to deposit bad checks, withdraw the funds, and leave town before the bad check was returned to the bank, supports the jury conviction of Brown for violation of 18 U.S.C. § 2.

There is ample credible evidence in the record in support of the jury's verdict.

### (3) *Severance*

■ A motion to sever is within the sound discretion of the trial court. *United States v. Bohr*, 581 F.2d 1294, 1300 (8th Cir.), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978); *United States v. Smith*, 564 F.2d 244, 247 (8th Cir.), *cert. denied*, 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1977); *United States v. Johnson*, 540 F.2d 954, 959 (8th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 647, 50 L.Ed.2d 628 (1976).

Nothing of record indicates that Judge McManus' refusal to sever constituted an abuse of discretion or resulted in prejudice to any defendant. That a third defendant tried with Brown and Clincy was found innocent demonstrates that the jury was able to keep separate the evidence with respect to each defendant.

### (4) *Other Crime Evidence*

Rule 404(b) of the Federal Rules of Evidence provides in pertinent part: "Evidence

of other crimes, wrongs, or acts . . . may, however, be admissible . . . as proof of motive, opportunity, intent, plan, knowledge . . . ."

Judge McManus instructed the jury that the evidence of other crimes was admitted "solely for the purpose of its bearing on the question of intent of the particular defendant or defendants, and a common plan or scheme," and that it could consider such evidence for no other purpose. Thus was the evidence admitted under 404(b) for a limited purpose and the jury so instructed.

That the other crimes evidence was admissible under Rule 404(b) does not, however, exhaust the required inquiry. Under Federal Rule of Evidence 403, evidence otherwise admissible is excludable if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury.

■ In reviewing a discretionary decision to admit evidence under Rule 403, great deference is due the trial judge who saw and heard the evidence. *United States v. Peltier*, 585 F.2d 314, 321 (8th Cir. 1978); *United States v. Bohr*, 581 F.2d 1294 at 1299; *United States v. Matlock*, 558 F.2d 1328, 1332 (8th Cir.), *cert. denied*, 434 U.S. 872, 98 S.Ct. 218, 54 L.Ed.2d 152 (1977).

The evidence of other crimes, as above indicated, related to fraudulent activity by defendants at other banks in Mississippi, Michigan, Minnesota and Illinois. Its probative value was high. It established: that Brown and Clincy travelled together from Minnesota, through Iowa, to Mississippi, and back to Iowa; that the check protector was carried by them during their travels; and that the later-forged Knox Enterprise checks were with Brown and Clincy in Mississippi.

Brown says he was prejudiced because the other crimes testimony implicated only Clincy. A witness testified, however, that she travelled from Minnesota to Mississippi with Brown and Clincy and the thrust of her testimony implicated Brown in the check cashing scheme. Judge McManus instructed the jury to consider evidence of other bad checks only with respect to the defendant it was offered against. That one co-defendant was found innocent demonstrates that the jury followed that instruction and that neither of Clincy's co-defendants were prejudiced by evidence relating to other crimes of Clincy.

Brown and Clincy argue that *United States v. Broadway*, 477 F.2d 991 (5th Cir. 1973) requires exclusion of the challenged evidence here. We disagree. In *Broadway*, the trial court had admitted evidence of prior offenses to establish intent and guilty knowledge. The Court of Appeals reversed because the evidence was devoid of proof that earlier forged securities had been entered in interstate commerce, *Id.* at 995. There was here ample testimony that earlier forged checks were entered into interstate commerce and that Brown and Clincy cashed them.

■ The evidence of other crimes was properly admitted. Its probative value far outweighed any potential for prejudice. Its admission was not an abuse of discretion.

### (5) *Chain of Custody*

After Brown and Clincy's arrest, certain materials were given to police by Barbara Parizek, with whom Brown had been visiting. The materials were in a box and consisted of the check protection machine, blank and partially completed checks of the type cashed at the Iowa banks, and other items.

In *United States v. Malone*, 558 F.2d 435 (8th Cir. 1977) this court said determinations "by a District Court that exhibits are admissible will not be overturned unless there has been a clear abuse of discretion," *Id.* at 438.

■ Admission of a physical exhibit requires a showing that it is in substantially the same condition it was in when the crime was committed. *United States v. Brown*, 482 F.2d 1226, 1228 (8th Cir. 1973).

■ In this case, the only suggestion of tampering relates to exhibit B-4, a check for $6,896.15, drawn on the account of Knox Enterprises and payable to Robert Dennis

(Brown's alias). A police officer testified that B-4 was among the materials turned over by Parizek, who had originally testified that all the checks she gave the police were blank, but later amended her testimony to say that some checks had been blank and others had been filled in. Judge McManus heard the testimony and observed the demeanor of the police officer and Parizek. On this record, it cannot be said that his admission of B-4 was an abuse of discretion.

### (6) *Speedy Trial Act*

Section 3162 of the Speedy Trial Act, 18 U.S.C. §§ 3161-74 (1976) sanctions dismissal of the indictment for failure to meet the requirement of section 3161(b) that indictments occur "within thirty days of arrest." Section 3162 did not, however, become effective until July 1, 1979. 18 U.S.C. § 3163(c). The present arrest and indictment occurred in 1978, and the sanction of § 3162 is not applicable. *See United States v. Lee,* 575 F.2d 1184, 1187 (6th Cir. 1978).

■ Moreover, apart from Speedy Trial Act considerations, the record establishes that Clincy's right to a speedy trial under the Sixth Amendment was not violated. A federal complaint was first filed against Clincy on November 22, 1978. Clincy was indicted on December 19, 1978. His trial commenced January 22, 1979. Thus, only 27 days elapsed between the filing of the federal complaint and the indictment and 33 days elapsed between the indictment and the trial. The length of the delay was minimal and no prejudice resulted, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Clincy argues that the time from his arrest on state charges until the filing of the federal complaint should be included. We agree with the rejection of that approach in *United States v. Romero,* 585 F.2d 391, 398 (9th Cir. 1978), *cert. denied,* 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979), and with that court's view that the "speedy trial right of the Sixth Amendment [is] not activated until the date of *federal* 'accusation'" (citing *United States v. Cordova,* 537 F.2d 1073, 1075 (9th Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976)).

### (7) *Probable Cause for Arrest*

■ The check for $6,986.80, with which Clincy had opened an account on August 8, 1978, was returned as drawn on a closed account. Clincy was arrested in the midst of his attempted withdrawal from that account.[4] Further, the police were looking for Clincy (as Abdullah Shabazz) because of his earlier personal check, drawn on his personal and insufficient account, payable to and used by Brown to open an account. On those facts, probable cause existed for the arrest by local police of which Clincy complains.

### (8) *Bank Records*

Clincy's argument that bank records were obtained without subpoena is not supported by the record. The bank official and a police officer testified that the bank records were obtained upon service of subpoena. Judge McManus ruled that evidence admissible, and nothing of record contradicts that ruling. The objection at trial was that the bank records were improperly obtained, not to the absence of the subpoena itself from the record. Thus the attack was directed to credibility and determinable by the trial judge.

Clincy then points to the requirement of the Protection of Financial Privacy Act of 1978, 12 U.S.C. §§ 3401-22, that banks shall maintain their records in confidence. That Act, however, did not become effective until March 10, 1979. Moreover, § 3417(d) of

---

4. Counsel's brief for Clincy says the attempted withdrawal was for $840 and at that time the balance in the account was $1,346.06, citing exhibit 4-B and testimony thereon. The exhibit and testimony, however, specifically state that the balance was shown as $1,346.06 on September 15, 1978, or 15 days *after* the attempted withdrawal. The testimony indicated that the bank did not debit the returned check but merely placed the account in a "hold" status.

that Act limits judicial remedies to fines upon the banks for non-compliance.

■■■ (9) *Wife's Testimony*[5]

A careful review of the transcript establishes the absence of reversible error stemming from the testimony of Mrs. Clincy. Though counsel raised an initial objection to Mrs. Clincy's testifying at all, sidebar consultations with all counsel and the conduct of the trial thereafter, including cross-examination of Mrs. Clincy by counsel for all three defendants, demonstrate that agreement was reached and complied with respecting her testimony. Though the record would support the view that no blanket objection to Mrs. Clincy's testifying survived, the importance of the marital privilege warrants a broader treatment of Clincy's argument.

Mrs. Clincy's testimony concerning events prior to her marriage was limited to her meeting Clincy and her forming and operating Knox Enterprises with him for a short time prior to May 16, 1978. Nothing in that testimony reflected illegal activity of any kind on the part of anyone. The sole testimony of Mrs. Clincy about events after her May 16th marriage to Clincy, and touching Clincy in any way, was her statement that he left her within two weeks after the marriage and that she had not seen him since.[6] Her entire remaining testimony about events after her marriage concerned only herself, *i. e.*, statements that signatures on various checks were not her signature.

■■■ In *United States v. Smith*, 533 F.2d 1077, 1078–79 (8th Cir. 1976), and in *United States v. Allery*, 526 F.2d 1362, 1365 (8th Cir. 1975), this court noted that two of the three forms of marital privilege recognized

at common law are still observed by federal courts: (1) a prohibition of testimony concerning inter-spousal communications; and (2) the "anti-marital facts" privilege against testimony by one spouse as a witness against the other.

Clincy was totally unharmed by his wife's testimony. We conclude, moreover, that the marital privilege itself went unscathed in this case. The privilege is not absolute. The Federal Rules of Evidence, Rule 501, concerning privileges in general, requires application of common law principles to privileges as those principles "may be interpreted . . . in the light of reason and experience." Privileges are impediments to the search for truth, finding their justification in the priority of societal values they serve. The higher-than-truth value served by the privilege before us is the protection of the marital bond. Where, as here, Mrs. Clincy was with her husband for two weeks and had not seen him for the entire eight months between his leaving her and the date of trial, it is difficult to visualize how preservation of that value would have required the total exclusion of Mrs. Clincy from the witness stand. *See United States v. Cameron*, 556 F.2d 752, 756 (5th Cir. 1977).

■■■ Mrs. Clincy's testimony having been effectively devoid of interspousal communications and related to objective facts having no per se effect on Clincy, and the record indicating no injury to privilege-protected values, we find no basis for reversal in the admission of her testimony.

(10) *The Juror*

■■■ Though comments of a court official to a juror about the merits of a case may be cause for reversal, *see Parker v.*

---

**5.** Clincy objects to a bank employee's testimony that Mrs. Clincy signed an affidavit stating that signatures on five checks were not her signatures. There was no testimony and nothing in the affidavit concerning who might have written Mrs. Clincy's name on those checks. Nothing whatever in either the bank employee's testimony or in the affidavit have anything whatever to do with Clincy. Nothing in the rules designed to protect the marital bond precludes testimony by third parties concerning a

spouse's own legal acts. *See United States v. Long,* 468 F.2d 755 (8th Cir. 1972), n.3.

**6.** Interspousal communications are not limited to speaking and writing. If, however, Clincy's departure be considered a communication, it had no relation to the crime charged or to any defense. If admission of that testimony was error, it was harmless in view of the totality of the evidence.

*Gladden,* 385 U.S. 363, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966), that did not occur here. Judge McManus, immediately upon being informed of the conversation, questioned the marshall and juror involved. Both said the conversation was about the juror's car being parked in an improper place, and that nothing was said about the case.

Clincy, being escorted out of the courthouse by another marshall, claims to have overheard the challenged communication and asserted that the case was discussed. That assertion was contradicted by the escorting marshall, who said he also overheard the communication and that it concerned only the parking problem.

Judge McManus examined the juror, the two marshalls, and Clincy concerning the matter, and, crediting the statements of the juror and two marshalls, determined that no grounds for mistrial existed. No basis exists in the record for overturning that determination.

### Pro-Se Briefs

■ Brown and Clincy, in addition to the appeal briefs of their counsel, filed their own briefs. The major new assertion raised in both pro-se briefs is that Brown and Clincy were denied effective assistance of counsel. A careful examination of the record establishes that the assertion is without merit. Counsel for Brown and Clincy objected to evidence they considered improper and zealously cross-examined witnesses for the prosecution. The record demonstrates that counsel rendered the "skills and diligence that a reasonably competent attorney would . . . under similar circumstances." *United States v. Easter,* 539 F.2d 663, 666 (8th Cir.), *cert. denied,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1976).

In their pro-se briefs, Brown and Clincy raise numerous other objections to the conduct of the trial. We have carefully considered each of those objections and find them either totally without merit or raised in counsels' briefs and discussed earlier in this opinion.

The conviction is affirmed.