STATE OF NEBRASKA, APPELLEE, V. CHARLES JESS PALMER, ALSO KNOWN AS CHARLES TINSLEY, ALSO KNOWN AS J. R. KIRKPATRICK, APPELLANT.

338 N.W.2d 281

Filed September 9, 1983. No. 82-548.

John A. Wolf and David Bush, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

KRIVOSHA, C.J.

The appellant, Charles Jess Palmer (Palmer), appeals from a jury verdict finding him guilty of felony murder, in violation of the provisions of Neb. Rev. Stat. § 28-303(2) (Reissue 1979), and from the subsequent sentence of death imposed by the trial court. This is the second appearance of this case before this court. See *State v. Palmer*, 210 Neb. 206, 313 N.W.2d 648 (1981) (*Palmer I*). The facts of the case are fully set out in *Palmer I* and for purposes of this appeal need not be repeated here.

Palmer has assigned some 26 alleged errors which he maintains entitle him to a reversal of his conviction. We need not consider all of the errors, because if one of his assigned errors, that the trial court erred in permitting his "former wife," Cheri Palmer, to testify against him, in violation of Neb. Rev. Stat. § 27-505(2) (Reissue 1979), is correct, then we are required by law to once again order a new trial in the case. We have examined the record and find that indeed the trial court did err in permitting Cheri Palmer to testify; therefore, we must reverse the conviction.

Mrs. Palmer did not testify in the first case. This was obviously due to the fact that the Palmers were then still married and she was precluded by the provisions of § 27-505(2), which provide: "During the existence of the marriage, a husband and wife can in no criminal case be a witness against the other. This privilege may be waived only with the consent of both spouses."

The record discloses that on February 24, 1982, following our decision in *Palmer I*, Mrs. Palmer filed

suit for divorce in the Travis County District Court located in Austin, Texas. A decree of divorce was entered by the Travis County District Court on May 12, 1982. On May 25, 1982, the State requested the court to grant a continuance of the Palmer murder trial because, apparently, prosecutors intended to call Mrs. Palmer as a witness but, believing that Palmer would appeal the divorce decree, anticipated that Mrs. Palmer would be ineligible to testify. The trial court denied the continuance and ordered the case to trial. On May 25, 1982, Palmer filed a motion for new trial in the Travis County District Court. On June 8, 1982, when Cheri Palmer testified in the District Court for Hall County, Nebraska, the motion for new trial in the divorce case was still pending in the Texas court; and even without the motion for new trial, this was within the 30-day period after the decree, during which the parties were barred from remarriage. On July 29, 1982, the trial court in Texas overruled the motion for new trial and Palmer filed an appeal with the Texas Court of Civil Appeals. According to the record presently before us, that appeal is still pending.

The question then specifically presented to us is whether Charles Palmer and Cheri Palmer were still husband and wife on June 8, 1982, when Mrs. Palmer testified against Palmer. If they were husband and wife on June 8, 1982, § 27-505(2) clearly precluded Cheri Palmer from testifying without Palmer's consent. One may argue that the underlying basis for the husband and wife privilege no longer existed in this case and therefore the statute should be so interpreted as to permit Cheri Palmer's testimony. This court, however, is without authority to do that. As we have previously noted, in the construction of a statute which is clear and unambiguous, courts cannot supply missing language, and it is not within the court's power to read into a statute meaning which the clear language of the statute does not warrant. See *Omaha Public Schools*

*v. Hall*, 211 Neb. 618, 319 N.W.2d 730 (1982). Moreover, where the language of the statute is plain and unambiguous, no interpretation is needed, and a court is without authority to change such language. See *State v. Schneckloth, Koger, and Heathman*, 210 Neb. 144, 313 N.W.2d 438 (1981). The Legislature, in adopting § 27-505(2), has barred the testimony of one spouse against another in a criminal case, except as specifically exempted, and we are powerless to ignore its direction.

While at first blush it may appear important to determine which law, Texas or Nebraska, should be applied in determining whether the divorce decree was final and therefore the Palmers no longer spouses, on closer examination it appears to make little difference, because, under either law, the divorce was not final. The law in both Texas and Nebraska seems clear that the relationship of husband and wife continued certainly while the motion for new trial was pending and during the time of appeal. Texas has on two specific occasions directly responded to this question. In the case of *Davis v. The State*, 96 Tex. Crim. 367, 257 S.W. 1099 (1924), the Texas Court of Criminal Appeals reversed a murder conviction because the defendant's wife, who had been granted a divorce, testified on behalf of the State at the trial which occurred while the divorce was pending on appeal. Specifically, the Texas Court of Criminal Appeals held that while a divorce was pending on appeal the wife could not testify against her husband. The rule in *Davis* was reaffirmed by the Texas Court of Criminal Appeals in *Acker v. State*, 421 S.W.2d 398 (Tex. Crim. 1967). As in the *Davis* case, Acker, the defendant, was charged with murder. Shortly after the case was set for trial, the State requested a continuance on the grounds that the only eyewitness, the defendant's wife, was presently in the process of obtaining a divorce so that she might testify against him. When the motion for continuance was overruled, the

State dismissed the criminal charges. The defendant's wife subsequently divorced him and the charges were later refiled. However, at the time of the defendant's criminal trial, the divorce case was pending in a Texas Court of Civil Appeals. The trial court overruled the defendant's motion in limine, as well as his objections at the time of trial to any testimony by his wife. In reversing the defendant's conviction the Texas appeals court specifically concluded that after rendition of a decree of divorce but before the divorce became effective to change the status of the parties, they are husband and wife with respect to their competency to testify against one another. Specifically, the Texas court held that the pendency of the appeal precluded the divorce from becoming effective so as to change the status of the parties. See, also, *Ex Parte J. C. Hodges*, 130 Tex. 280, 109 S.W.2d 964 (1937).

The Texas rule is consistent with the general rule. In 97 C.J.S. *Witnesses* § 80 at 474-75 (1957), the author notes: "Where a decree of divorce is not final, as where there is a writ of error pending, the status of husband and wife continues as far as concerns their competency to testify. During the period after rendition of the decree and before a divorce becomes effective to change the status of the parties, the parties are husband and wife with respect to their competency to testify for or against each other."

While it appears that Nebraska has never directly passed upon this question, it would appear that the laws regarding divorce in Nebraska are such that a similar rule would apply. Neb. Rev. Stat. § 42-372 (Reissue 1978) specifically provides in part: "A decree dissolving a marriage shall not become final *or operative* until six months after the decree is rendered, except for the purpose of review by appeal, and for such purpose only the decree shall be treated as a final order as soon as rendered. If an appeal is instituted within one month, such decree shall not

become final until such proceedings are finally determined. If no such proceedings have been instituted, the court may, at any time within such six months, vacate or modify its decree." (Emphasis supplied.) Furthermore, we have consistently held that in an appeal to the Supreme Court from a decree of dissolution, the marital status continues until a final determination is had. *Lippincott v. Lippincott*, 141 Neb. 186, 3 N.W.2d 207 (1942); *Westphalen v. Westphalen*, 115 Neb. 217, 212 N.W. 429 (1927). Moreover, if one of the parties dies before the 6-month period has expired, the surviving party once again becomes the surviving spouse, entitled to all of the rights and privileges of a surviving spouse. *In re Estate of Waller*, 116 Neb. 352, 217 N.W. 588 (1928).

It would appear that we have no choice but to determine that Cheri Palmer was still the wife of Charles Jess Palmer on June 8, 1982, and as such was barred from testifying against him. Nor can we regard the error as being nonprejudicial. Her testimony was that of an eyewitness to the alleged crime, and we cannot possibly say that her testimony, if inadmissible, was not prejudicial.

This is not the first time this court has been confronted with such a decision. In the case of *Garrett v. State*, 118 Neb. 373, 224 N.W. 860 (1929), this court likewise reversed and remanded for new trial a murder conviction because the trial court permitted a former wife to testify when in fact the decree of divorce was void due to the fact that it had been entered 1 day before the statutory waiting period. In ordering the new trial this court observed at 380, 224 N.W. at 863: "Whether or not the provision is a wise one is not for us to decide. Where a provision is plain and unambiguous in its terms and not susceptible of more than one construction, courts are not concerned with the consequences that may result therefrom but must enforce the law as they find it." Courts are often called upon to decide cases con-

trary to their own views but consistent with the law. That is what the American judicial system is all about. Regardless of how we may feel about the matter, the record clearly discloses that the trial court erred in permitting Cheri Palmer to testify. Because that error was prejudicial to the rights of the defendant, he must be granted a new trial, free of error.

Having thus disposed of this case on this error, we need not consider any of the other alleged errors raised by Palmer. The judgment is reversed and the cause remanded with directions for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting.

The defendant has been tried twice, convicted of first degree murder, and sentenced to death. The majority now holds that the defendant must be tried a third time or set free because the State used the testimony of his divorced spouse in the second trial.

All authorities seem to agree that once a divorce decree becomes "final," a divorced spouse is a competent witness. At the time of the second trial in this case, a judgment had been entered in the trial court divorcing the defendant from his spouse. Because the defendant's appeal in the divorce proceeding was pending, the court holds that the marriage was still "in existence" within the meaning of Neb. Rev. Stat. § 27-505(2) (Reissue 1979).

It seems to me that the relatively few cases that have considered the question and support this result ignore the reason for the rule.

The usual reason given for the rule barring the testimony of one spouse against the other in a criminal proceeding is that "such a policy is necessary to foster family peace." See *Hawkins v. United States*, 358 U.S. 74, 79 S. Ct. 136, 3 L. Ed. 2d 125 (1958). Once a dissolution proceeding has proceeded to judgment and a decree of divorce has been entered, it would seem that there is little family peace to be fostered.

As Chief Justice Burger observed in *Trammel v. United States*, 445 U.S. 40, 52, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980): "The contemporary justification for affording an accused such a privilege is also unpersuasive. When one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace. Indeed, there is reason to believe that vesting the privilege in the accused could actually undermine the marital relationship."

The privilege itself has been severely criticized. According to Wigmore, the privilege no longer has adequate reason for retention and is an indefensible obstruction to truth in practice. See 8 J. Wigmore, Evidence in Trials at Common Law § 2228 (1961). In 2 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 505[02] at 505-10 (1982), the author states: "Nevertheless, many leading commentators concluded that the privilege is unjustified, that it does not contribute to marital felicity, is based on the outmoded concept that husband and wife are one, and causes the suppression of relevant evidence, thereby impeding the doing of justice. Wigmore termed the privilege 'a legal anachronism,' McCormick called it 'an archaic survival of a mystical religious dogma,' Hutchins and Slesinger could 'see no reason for sacrificing individual justice . . . to a mythical family unity,' and both the Model Code and the Uniform Rules refused to adopt such a rule."

In *Trammel v. United States, supra* at 48-50, the Court noted: "Since 1958, when *Hawkins* was decided, support for the privilege against adverse spousal testimony has been eroded further. Thirty-one jurisdictions, including Alaska and Hawaii, then allowed an accused a privilege to prevent adverse

spousal testimony. 358 U.S., at 81, n. 3 [79 S. Ct. 136, 3 L. Ed. 2d 125 (1958)] (Stewart, J., concurring). The number has now declined to 24. In 1974, the National Conference on Uniform State Laws revised its Uniform Rules of Evidence, but again rejected the *Hawkins* rule in favor of a limited privilege for confidential communications. See Uniform Rules of Evidence, Rule 504. That proposed rule has been enacted in Arkansas, North Dakota, and Oklahoma —each of which in 1958 permitted an accused to exclude adverse spousal testimony. The trend in state law toward divesting the accused of the privilege to bar adverse spousal testimony has special relevance because the laws of marriage and domestic relations are concerns traditionally reserved to the states. See *Sosna v. Iowa*, 419 U.S. 393, 404 [95 S. Ct. 553, 42 L. Ed. 2d 532] (1975). Scholarly criticism of the *Hawkins* rule has also continued unabated.''

Some recent cases suggest that divorce or dissolution of the marriage is not necessary to bar the privilege if the facts indicate that in reality there is no marriage to preserve. In *United States v. Brown*, 605 F.2d 389 (8th Cir. 1979), in noting that the privilege is not absolute, the court said at 396: ''Clincy was totally unharmed by his wife's testimony. We conclude, moreover, that the marital privilege itself went unscathed in this case. The privilege is not absolute. The Federal Rules of Evidence, Rule 501, concerning privileges in general, requires application of common law principles to privileges as those principles 'may be interpreted . . . in the light of reason and experience.' Privileges are impediments to the search for truth, finding their justification in the priority of societal values they serve. The higher-than-truth value served by the privilege before us is the protection of the marital bond. Where, as here, Mrs. Clincy was with her husband for two weeks and had not seen him for the entire eight months between his leaving her and the date of trial, it is difficult to visualize

how preservation of that value would have required the total exclusion of Mrs. Clincy from the witness stand. See *United States v. Cameron*, 556 F.2d 752, 756 (5th Cir. 1977)."

In *United States v. Cameron*, 556 F.2d 752 (5th Cir. 1977), in holding the testimony of a spouse admissible, the court said at 755-56: "The exclusion of adverse testimony by a spouse is not an absolute privilege. There have been long recognized exceptions, such as exist in prosecutions for crimes committed by one spouse against the other or against the children of either; actions by one of the spouses against an outsider for an intentional injury to the marital relation; or in a criminal prosecution against one spouse in which a declaration of the other spouse made confidentially to the accused would tend to justify or reduce the grade of the offense. McCormick, Evidence, Section 85 (1972). See *Wolfe v. United States*, 291 U.S. 7, 54 S. Ct. 279, 78 L. Ed. 617 (1934); *Funk v. United States*, 290 U.S. 371, 54 S. Ct. 212, 78 L. Ed. 369 (1933). The Federal Rules of Evidence, Rule 501, recognizes no marital privilege per se, but rather recognizes a general privilege which 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'

"This reason and experience which the Supreme Court spoke of in *Wolfe*, *Hawkins*, and various other opinions, and which Congress refers to in Rule 501, places on the federal courts the responsibility of examining the policies behind the federal common law privileges so as to alter or amend them when reason and experience demand. If we are to fashion any exception in the case before us we must do so consistent with the rationale for the privilege. In the present case there were a number of factors which indicate that in spite of the legal existence of the marriage, as a social fact it had expired. There was no residence at which both spouses lived; there was a great disparity between the amount of time that

the couple cohabited and the time that one or the other chose not to live together; the husband had a more permanent living arrangement with another partner than with his spouse and, indeed, fathered a child with that person. All these factors cumulatively signify a marriage that was moribund. If the marital privilege is intended to preserve domestic harmony—the most substantial argument that judges and writers today advance in support of it—it is apparent that the present case is not one in which the privilege would serve any such purpose.

"We fashion no broad rule with our holding today as to when the marital privilege should be disallowed. We decide narrowly on the facts as they appear before us. That is, where, as here, the spouse was called to testify only as to objective facts, with no questions allowed as to any communication between the spouses, and where the evidence supported a finding that the marriage was no longer viable and its members had little hope or desire for reconciliation, reason, experience and common sense indicate that the traditional policy reasons for the privilege are non-existent. It was properly disallowed."

See, also, *United States v. Fisher*, 518 F.2d 836 (2d Cir. 1975); *Hudson v. State*, 295 So. 2d 766 (Miss. 1974); *United States v. Ryno*, 130 F. Supp. 685 (S.D. Cal. 1955), *aff'd* 232 F.2d 581 (9th Cir. 1956) (on ground testimony was not prejudicial).

The interest of the State in bringing the defendant to justice in this case should outweigh any hope of reconciliation between the parties after the decree of divorce had been entered in the dissolution proceeding.

McCOWN, J., joins in this dissent.

HASTINGS, J., dissenting.

The dissenting opinion of Boslaugh, J., traces the origin and reason for the rule relating to spousal testimonial privilege. When considered against that backdrop, it seems obvious to me that once a court

of competent jurisdiction has entered a decree of dissolution, whether subject to appeal or not, the marriage is no longer in existence within the meaning of Neb. Rev. Stat. § 27-505(2) (Reissue 1979).

Cases like *Lippincott v. Lippincott*, 141 Neb. 186, 3 N.W.2d 207 (1942), and *Westphalen v. Westphalen*, 115 Neb. 217, 212 N.W. 429 (1927), which refer to special circumstances such as property rights, right of inheritance, privilege to remarry, etc., are not applicable to this situation. To insist, for example, that a marriage is still in existence so as to prohibit the testimony of one spouse while the other spouse contests on appeal the amount of an alimony award makes no sense at all.

I do not believe that the testimony of Cheri Palmer should be rejected for the reason given in the majority opinion.

BOSLAUGH, J., joins in this dissent.