342 So.2d 156 (1977)
STATE of Louisiana
v.
Alfred SEWELL, III.
No. 58203.
Supreme Court of Louisiana.
January 24, 1977.
Rehearing Denied February 25, 1977.
*157 Richard V. Burnes, Gravel, Roy & Burnes, Alexandria, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Nathan Stansbury, Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
A true bill was returned by the grand jury of Lafayette Parish on September 8, 1975, charging that on August 25, 1975 Alfred Sewell III "committed aggravated kidnapping of one Dwight W. Andrus, Sr., in violation of the provisions of R.S. 14:44." In a twelve man jury trial on January 20-22, 1976 Sewell was found guilty as charged by an eleven-to-one verdict and sentenced to imprisonment at hard labor for life.
According to the record, Sewell devised a plan to kidnap Andrus, a prominent citizen of Lafayette engaged in the real estate business. Having previously determined where Andrus lived, on the morning of August 25, 1975 Sewell waited for him at an intersection at which Andrus must stop on his way to work. When Andrus arrived at the intersection and stopped, Sewell told him he had a flat tire. As Andrus got out of the car to inspect the tire, Sewell forced himself into the car and compelled him at gunpoint to drive away.
After driving some distance, Sewell demanded that Andrus call his son to bring $94,000, and say that the money was needed for a real estate transaction. Andrus convinced Sewell that such a plan would not work, but offered an alternative to the demand. *158 He would go for the money at a bank where he could obtain $25,000 on his signature. Sewell said if Andrus would obtain $35,000 and not alert the police he would accede to the plan.
With this understanding, Sewell drove to the bank. There he inserted an object in Andrus' pocket, purportedly a listening device which would enable him to hear any utterance by Andrus. Andrus then walked into the bank while Sewell watched him from a distance. In preparing the check for the withdrawal at the teller's window, Andrus scrawled a note alerting the teller, who summoned the police. Because of their prompt response to the summons, the police were able to arrest Sewell at the parking lot near the bank before he could escape. Andrus, of course, was freed. Based upon the undisputed fact disclosed in pretrial proceedings that Andrus was liberated unharmed, the trial judge decided the case did not involve a capital offense.
Principally, on this appeal, the defense contends that error occurred when the trial court failed to consistently conduct the proceedings either as a capital or noncapital case.
The argument is that this case should have been tried as a capital case. Article 44 of the Criminal Code defines aggravated kidnapping and prescribes the penalty as follows:
"Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
"(1) The forcible seizing and carrying of any person from one place to another; or
"(2) The enticing or persuading of any person to go from one place to another; or
"(3) The imprisoning or forcible secreting of any person.
"Whoever commits the crime of aggravated kidnapping shall be punished by death; provided that if the kidnapped person is liberated unharmed before sentence is imposed then the sentence of death shall not be given but the offender shall be sentenced to life imprisonment at hard labor."
As the quoted aggravated kidnapping statute is understood, in effect, two separate offenses are defined: one is a capital offense in which the kidnapped person is not liberated unharmed before sentence; the other is a noncapital offense in which the sentence of death cannot be given, but the offender must be sentenced to life imprisonment at hard labor when the kidnapped person is liberated unharmed before sentence.
In the former case the trial should be conducted as a capital case; whereas, in the latter instance, when the kidnapped person is liberated before the trial begins, the procedure should conform with that prescribed for offenses involving a mandatory life imprisonment at hard labor. The purpose of the lesser penalty is to deter the kidnapper from harming his victim. Although the liberation of the kidnapped person in the instant case was not Sewell's choice but came about as a result of police intervention, the liberation nevertheless removed the offense from the classification of a capital crime.
It was understood at the beginning that the trial would be conducted as a prosecution for a noncapital offense involving life imprisonment. Although the following entry in the minutes of court is not free of ambiguity, the inference unmistakably indicates that all parties agreed the case would be tried as a noncapital case:
"A stipulation was entered between the District Attorney and Defense stating that the jurors were [not] sequestered in a noncapital matter and that the jurors were charged that ten (10) concurring votes are necessary to render a verdict. The Court then stated that this was so because there was no evidence to proceed *159 with the capital punishment aspect of the article in question."
. . . . .
During voir dire examination of the prospective jurors the District Attorney advised them: "The Defendant in this case is not subject to capital punishment; because the victim alleged by the State to have been kidnapped, was released unharmed, prior to this time. Therefore, the sentence that could be imposed by the court is life imprisonment." There was no defense objection to this statement; nor did the trial judge dispel this understanding. Obviously the State was not seeking the death penalty.
Later, during his opening statement, defense counsel restated the understanding. Cautioning the jury to consider the gravity of the offense, he said, "You're talking about the possibility of a conviction, and a subsequent life imprisonment in Angola. So you have to weigh this evidence very carefully." Obviously the defense was not based upon the prospect of a death penalty. Instead the defense was based upon a charge punishable by life imprisonment.
Furthermore, in his charge to the jury, the trial judge instructed:
"In this case you may find one of four verdicts:
"(1) Guilty as charged, in which case the punishment shall be life imprisonment at hard labor.
"(2) Guilty of simple kidnapping, in which case the punishment would be a fine of not more than two thousand dollars or imprisonment, with or without hard labor, for not more than five years, or both.
"(3) The defendant has entered a plea of not guilty, coupled with a plea of not guilty by reason of insanity. Therefore, if you find that the defendant did in fact commit the crime charged, or any lesser included crime, but that he was insane at the time of the commission of the crime, then your verdict must be not guilty by reason of insanity.
"(4) Not guilty."
By this instruction the trial judge again confirmed the understanding already expressed that this was not a capital case. There was, in effect, an expressed understanding and tacit agreement that the trial would be conducted as a noncapital case. United States v. Crowell, 498 F.2d 324 (5th Cir. 1974); United States v. McNally, 485 F.2d 398 (8th Cir. 1973); United States v. Crowell, 359 F.Supp. 489 (M.D.Fla.1973).
At no time was the death penalty considered applicable by the prosecution, the defense or the judge; nor was it mentioned to the jury as a possible penalty. United States v. Martinez, 536 F.2d 886 (9th Cir. 1976); Loux v. United States, 389 F.2d 911 (9th Cir. 1968). On voir dire examination of prospective jurors, defense counsel did mention a possible eleven-to-one vote by the jury during its deliberations. Based upon this statement he argues that he was laboring under the impression that this was a capital case requiring a unanimous verdict. Otherwise, he contends, reference to an eleven-to-one verdict was irrelevant to this trial. However, the object of the inquiry involving this hypothesis was to ascertain whether the prospective jurors would adhere to an independent judgment or be swayed by the judgment of eleven of their fellow jurors who had arrived at a contrary conclusion. This interrogation did not indicate that defense counsel or the jury labored under the impression that the trial was being conducted as a prosecution for a capital offense.
Although the defense alleges that the trial judge ruled at a bail hearing that this was a capital case, the record does not support such an allegation. To the contrary, the motion to reduce bond, and the minutes of court, more properly support the inference that this charge entitled defendant to be admitted to bail, as a matter of right the only issue being the amount. In a capital case, on the other hand, the person charged shall not be admitted to bail if the proof is evident or the presumption great that he is guilty. La.Code Crim.Pro. art. 313. The record does disclose that defendant's bail bond was fixed before indictment, *160 even before the defense moved for the reduction, a practice which could not ordinarily be expected in a capital case. As a result of the hearing on the motion to reduce, the bond was reduced from $350,000 to $100,000.
Contrary to the defense contention that this was a capital case because the State, at this bail hearing, presented evidence on the merits of the charge, the State's presentation, if there was one, could just as well have been to support the seriousness of the offense and the weight of the evidence against defendant. There are factors bearing upon the determination of the amount of the bail. La.Code Crim.Pro. art. 317. Then, after the indictment was returned, the minutes indicate that a motion was made to reduce the bond further, but the bond was allowed to stand as previously set. La.Const. art. I, § 18 (1974); La.Code Crim.Proc. arts. 311-314. Because defendant's entitlement to bail was apparently never at issue, only the amount, the inference is that this was not considered to be a capital case.
Having concluded that this prosecution is not governed by the procedure prescribed for the trial of capital cases, the assignments of error, based on the premise that this trial should have been conducted as a prosecution for a capital offense, are without merit.
Thus, it was not necessary, as the defense contends, to sequester the jury in this noncapital case until after the court's charge. La.Code Crim.Pro. art. 791. It was also proper to instruct the jury that ten of the twelve must concur to find a verdict. La.Const. art. I, § 17 (1974); La.Code Crim.Pro. art. 782.
In the alternative, the defendant contends that if the Court should find that this prosecution did not involve a capital offense, he should have been informed at arraignment of his right to waive a jury trial and his right to elect to be tried by the Court. The issue is presented in a motion for a new trial.
Article 780 of the Code of Criminal Procedure is relied upon to support this position. The article declares:
"A defendant charged with any offense except a capital offense may knowingly and intelligently waive a trial by jury and elect to be tried by the court. At the time of arraignment, the defendant in such cases shall be informed by the court of his right of waiver and election."
See also La.Const. art. I, § 17 (1974).
At the arraignment on October 15, 1975 defendant was represented by able, experienced and competent counsel. He was formally arraigned and entered a plea of not guilty and not guilty by reason of insanity. The Court then granted the accused fifteen days to file motions and pleadings.
Consequently the judge did not comply with Article 780 in that he did not inform defendant of his right of waiver and election. Defendant was apparently, at the time, uninterested in waiving his right to trial by jury, for no motion to be tried by the judge alone was made in the time allotted. Indeed, defense counsel participated in the selection of the jury without objection in the full knowledge that this was a noncapital case, as our inspection of the record has disclosed.
The Constitution guarantees a jury trial in a case such as this where the punishment is necessarily confinement at hard labor; and it also provides that, except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury. La.Const. art. I, § 17 (1974). The right to waive jury trial in this case is, therefore, a constitutional right, but the right to be informed of this right is contained in a statutory directive found in Article 780. Thus, we are not concerned with the waiver of the right to waiver, a constitutional right, but, instead, our concern is with non-compliance with a statutory directive to inform of the right to waiver.
Because the general rule is that an accused is entitled to a jury trial in such a case as this, a problem is more often presented by a claim that trial by jury was not intelligently waived. See State v. Kavanaugh, 203 La. 1, 13 So.2d 366 (1943); State v. Williams, 202 La. 374, 11 So.2d 701 *161 (1942); State v. Robinson, 43 La.Ann. 383, 8 So. 937 (1891); State v. Touchet, 33 La.Ann. 1154 (1881).
In a recent unanimous decision of this Court the issue in the case at hand was presented when the defendant attended the arraignment with his court appointed counsel and was not specifically advised by the trial judge of his right of waiver and election. Nevertheless, in State v. Sharp, 338 So.2d 654 (La.1976), the Court, concluded:
". . . Defendant has not been sufficiently prejudiced thereby, in this case, to warrant reversal of his conviction.
"First of all we review the merit of the contention, notwithstanding that he filed the inappropriate motion for a new trial rather than the motion in arrest of judgment, to raise the issue.2
2 La.C.Cr.P. art. 859 as amended provides as follows:
Grounds for arrest of judgment
The court shall arrest the judgment only on one or more of the following grounds:

. . . . .
(4) The tribunal that tried the case did not conform with the requirements of Articles 779, 780 and 782 of this code;"

. . . . .
"While Article 780 does state that the defendant shall be informed by the court of his right to waiver and election, the constitutional provision, Article I, § 17, merely relates that defendant may knowingly and intelligently waive his right to a trial by jury. While we are disinclined to treat this statutory directive lightly, we are equally satisfied that this defendant did not suffer deprivation of a substantial statutory right (see Article 920), that is, of being advised by the court of his right to waiver and election, since we are satisfied that through informed, able and experienced counsel he was aware of the right to waive the jury and did opt not to do so. Counsel in argument candidly admits that, in effect, the crux of his argument is simply that defendant should have been instructed appropriately by the trial judge at his arraignment. He does not argue that he was not aware of the option, nor that he did not deliberately exercise it. He likens the directive of Article 780 to the on-the-record requirement of a Boykinization. We do not sanction and will not hold to a hard and fast rule to the effect that failure of the court to verbalize the option at arraignment of defendant necessarily constitutes reversible error. We are satisfied in this case that defendant was aware of his option through advice of counsel and opted to be tried by jury and not waive that right.
"The trial judge's omission in this case was not prejudicial to defendant."
All of the factors which influenced the decision in State v. Sharp are present in the instant case. For the reasons assigned there and those assigned herein this defense contention is also without merit. The conviction and sentence are therefore affirmed.