STATE OF NORTH CAROLINA v. GLENN MILLER SQUIRE

No. 115

(Filed 27 January 1981)

### 1. Searches and Seizures § 34— impoundment of vehicle — article in plain view — search pursuant to warrant

Defendant cannot complain that officers chose to afford defendant the protection of impounding his vehicle and keeping it locked and under custody until a search warrant could be obtained rather than seizing a knife which was in plain view on the dashboard of the car at the time the car was impounded.

### 2. Criminal Law § 87.1— leading questions

The trial judge did not abuse his discretion in permitting the district attorney to ask leading questions directed to the State's 15-year-old witness where the judge stated that he was allowing the leading questions because, in his opinion, the witness exhibited a lack of intelligence, appeared not to understand many of the words used by the district attorney and defense counsel, and had difficulty reading and comprehending a written statement he had given to police officers.

### 3. Criminal Law § 89.2— testimony admissible for corroboration

Testimony by kidnapping and rape victim that a co-perpetrator of the offenses told her that defendant was putting a gun together, that he was crazy, and that he was going to kill the victim was properly admitted to corroborate prior testimony of another witness, although the co-perpetrator who allegedly made these statements never testified.

### 4. Criminal Law § 87.3— use of notes to refresh recollection

An officer was properly allowed to use notes he took during his interview with a kidnapping and rape victim in order to refresh his recollection as to what she reported to him at that time, although the court had previously ruled that the notes could not be introduced into evidence or read to the jury.

### 5. Criminal Law § 87— State's calling of witness subpoenaed by defendant

It was within the discretion of the trial judge to permit the State to call and question a witness subpoenaed by defendant.

### 6. Criminal Law § 90— State's impeachment of own witness

The trial court did not abuse its discretion in permitting the State to impeach its own witness where it appears that the district attorney was surprised by the witness's testimony at the trial.

### 7. Criminal Law § 89.2— testimony corroborating personal observations

In this prosecution for kidnapping and rape, an officer's testimony that a State's witness told him that he was riding with defendant in his car on the night of the alleged offenses when defendant stopped his car on the highway, offered a white girl a ride, and drove off when she refused was properly admitted to

State v. Squire

corroborate testimony by the State's witness concerning his personal observations and was not offered to impeach contrary testimony by another State's witness who was also riding in defendant's car on the night in question.

8. Criminal Law § 113.9— instructions — misstatment of date of offenses — absence of objection

In a prosecution for kidnapping and rape, defendant waived objection to the court's misstatement of the date of the offenses as 20 October 1979 rather than the correct date of 21 October 1979 by failing to bring the misstatement to the court's attention in time to afford an opportunity for correction. Furthermore, defendant was not prejudiced by the misstatement considering the amount of testimony referring to the date of the offenses as 21 October 1979 and the trial judge's instruction that the jury should be guided by its own recollection of the evidence.

9. Kidnapping § 1— failure to instruct on kidnapping in second degree

The existence of two ranges of sentences under G.S. 14-39(b) did not create two separate degrees of the offense of kidnapping, and the trial court did not err in failing to instruct the jury on kidnapping in the second degree where G.S. 14-39 provided for only one offense of kidnapping at the time defendant was tried for and convicted of kidnapping.

10. Kidnapping § 2— life sentence for kidnapping

Defendant's evidence was insufficient to meet his burden of proving the mitigating circumstances set forth in G.S. 14-39(b) by a preponderance of the evidence, and the trial judge acted properly within his discretion in sentencing defendant to life imprisonment for kidnapping, where the State presented substantial evidence tending to show that the victim was kidnapped, repeatedly raped by defendant and three other males and released near her home, and defendant's evidence to the contrary consisted of his own testimony denying participation in the offenses charged and the testimony of several witnesses which tended to show an alibi for defendant at the time the crimes were committed.

11. Constitutional Law §§ 79, 83; Criminal Law §§ 138.1, 138.2— concurrent sentences of life imprisonment — no cruel and unusual punishment — no denial of equal protection

The imposition on defendant of two concurrent terms of life imprisonment for kidnapping and first degree rape did not constitute cruel and unusual punishment since the sentences were authorized by G.S. 14-39 and G.S. 14-21. Furthermore, the sentences did not violate defendant's equal protection rights because other persons involved in the same offenses received lesser punishments.

Justice MEYER did not participate in the consideration or decision of this case.

DEFENDANT appeals from judgment of *Tillery, J.,* entered at the 25 February 1980 Criminal Session of Superior Court, HALIFAX County.

Defendant was tried upon indictments, proper in form, charg-

ing him with first degree rape and kidnapping. The jury found defendant guilty on both charges. From the trial court's judgment sentencing him to two terms of life imprisonment, to be served concurrently, defendant appeals as a matter of right pursuant to G.S. 7A-27(a).

The State's evidence tended to show that Kathy Renee Freeman, a sixteen-year-old female, was kidnapped and raped in the early morning hours of 21 October 1979. Ms. Freeman testified that on the night in question she was walking along Highway 158 towards her home in Roanoke Rapids, North Carolina, when several black males and females in a white, four-door automobile stopped beside her and offered to give her a ride. She refused and the car drove away. Five to ten minutes later she saw a black male jogging on the other side of the road. The man crossed the road, grabbed her by the arm, and threatened her with a knife. He forced her across the road and into a clump of bushes, where another black male was waiting. A white, four-door automobile occupied by two other black males then approached them and Ms. Freeman was pushed into the car with the four males. She was taken to a wooded area nearby and raped repeatedly by each male. Ms. Freeman stated that the four males continued to brandish the knife and threaten her throughout the entire incident. At approximately 5:00 a.m. she was left near the fire station in Roanoke Rapids. She then walked home, reported the incident to her mother, took a bath, and washed the clothes she had been wearing. She testified that she did not notify law enforcement officers until approximately 7:00 p.m. on 21 October 1979 because the four males had threatened to harm her if she reported the incident. A doctor examined Ms. Freeman that evening and reported the presence of spermatozoa in her vagina, one of which could have been deposited during the previous forty-eight hours. Ms. Freeman identified defendant at trial as the man who had run up to her, grabbed her, pushed her into the car, and raped her several times.

James Short testified under a plea bargaining agreement with the State that he was one of the four males who kidnapped and raped Ms. Freeman on 21 October 1979. His testimony was identical to Ms. Freeman's on all major points.

Defendant was arrested on 24 October 1979. A white, four-door, 1966 Chevrolet Malibu automobile registered in his name was impounded at that time. A search of the car pursuant to a warrant

on 26 October 1979 disclosed a knife, several shotgun shells, a white rubber cord, and seventy latent fingerprints. Ms. Freeman identified the knife at trial as the one defendant had used to threaten her.

Defendant testified in his own behalf, denying any knowledge of or participation in the kidnapping and rape of Ms. Freeman on 21 October 1979. He presented several witnesses whose testimony tended to establish an alibi for defendant at the time the offenses were committed.

Other facts pertinent to the decision will be set forth in the opinion below.

*Charlie D. Clark, Jr. (deceased) and A. S. Godwin, Jr. for defendant.*

*Attorney General Rufus L. Edmisten by Assistant Attorney General Henry T. Rosser for the State.*

COPELAND, Justice.

Defendant argues numerous assignments of error on appeal. We have carefully considered each assignment and conclude that the trial court committed no error which would entitle defendant to a new trial.

[1] By his first assignment of error, defendant contends that the trial court erred in denying defendant's motion to suppress the evidence seized from defendant's automobile during a search pursuant to a warrant. Detective C.E. Ward of the Halifax County Sheriff's Department testified for the State that defendant was arrested at his place of work, and that the keys to his car were seized during a search of his person incident to the arrest. The car was parked outside defendant's place of work. After defendant was arrested, the car was driven by a law enforcement officer to the Halifax County jail, where it ws impounded, locked, and stored behind the jail until a search warrant was obtained. The car was searched pursuant to a warrant on 26 October 1979, two days after it was impounded. Defendant does not contend that the search warrant was invalid or that the search was conducted contrary to law. He argues that since the knife seized during the search was in plain view on the dashboard of the car, the officers should have seized it at the time the car was impounded, under the "plain view" exception to the warrant requirement. It is well established in this

jurisdiction that law enforcement officers may seize evidence in plain sight without a warrant. *State v. Williams*, 299 N.C. 529, 263 S.E. 2d 571 (1980); *State v. Hunter*, 299 N.C. 29, 261 S.E. 2d 189 (1980). A warrantless search of a vehicle capable of movement, such as the car involved in this case, may also be made when officers have probable cause to search it and exigent circumstances make it impracticable to secure a search warrant. *State v. Jones*, 295 N.C. 345, 245 S.E. 2d 711 (1978); *State v. Cobb*, 295 N.C. 1, 243 S.E. 2d 759 (1978). However, the laws of this State provide for searches made pursuant to a warrant and do not require a warrantless search under any circumstances. G.S. 15A-241 *et. seq.* Defendant cannot complain that the officers in the case *sub judice* chose to afford defendant the protection of impounding his vehicle and keeping it locked and under custody until a search warrant could be obtained. Defendant's assignment of error is without merit and overruled.

**[2]**   Under his second assignment of error, defendant argues that the trial court erred in permitting the district attorney to ask leading questions directed to State's witness James Short. A trial judge, in his discretion, may permit any party to ask leading questions, and there is no reversible error absent abuse of this discretion. *State v. Clark*, 300 N.C. 116, 265 S.E. 2d 204 (1980); *State v. Berry*, 295 N.C. 534, 246 S.E. 2d 758 (1978); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). If the witness is having difficulty understanding or answering questions because of immaturity, age, infirmity, or ignorance, it is permissible for the trial judge to allow the witness to be interrogated by leading questions. *State v. Hopkins*, 296 N.C. 673, 252 S.E. 2d 755 (1979); *State v. Berry, supra; State v. Greene, supra;* 1 Stansbury's North Carolina Evidence § 31 (Brandis Rev. 1973). In this case, the trial judge stated that he was allowing the district attorney to question fifteen-year-old James Short by leading questions because, in his opinion, the witness exhibited a lack of intelligence, appeared not to understand many of the words used by the district attorney and defense counsel, and had difficulty reading and comprehending a written statement he had given to police officers. Hence, we hold that the trial judge did not abuse his discretion and find defendant's assignment of error without merit.

**[3]**   Defendant alleges under assignment of error number seven that the trial court erred in allowing the prosecuting witness, Kathy Freeman, to testify as to a conversation between herself and

one of the co-perpetrators of the offenses, which took place out of the presence of defendant. After the trial judge instructed the jury that any statements by Ms. Freeman concerning her conversation with this person were to be considered for corroborative purposes only, she was permitted to relate the co-perpetrator's statements to the effect that defendant was putting a gun together, that he was crazy, and that he was going to kill Ms. Freeman. Defendant claims that this testimony could not have been offered for corroborative purposes because the co-perpetrator who allegedly made these statements never testified. We disagree. Ms. Freeman's statements were admitted for the purpose of corroborating the testimony of James Short, not of any other participant in the offense. James Short had previously testified that defendant produced a gun from the trunk of his car and stated that he intended to kill Ms. Freeman. Ms. Freeman's testimony was therefore admissible as evidence tending to corroborate the prior testimony of another witness. *State v. Rogers*, 299 N.C. 597, 264 S.E. 2d 89 (1980); 1 Stansbury's North Carolina Evidence § 52 (Brandis Rev. 1973).

**[4]** By his fourteenth assignment of error, defendant contends that the trial court erred in allowing the district attorney to continue to question Detective Charles E. Ward concerning the notes he had taken during his interview with prosecuting witness Kathy Freeman, since the trial judge had previously ruled that the notes could not be introduced into evidence or read to the jury. It is well established in this jurisdiction that a witness may use notes previously prepared by him in order to refresh his memory during his testimony at trial, so long as he does not read them to the jury. The witness' testimony must actually be from memory; the notes are merely a tool to aid his recall. *State v. Adams*, 299 N.C. 699, 264 S.E. 2d 46 (1980); *State v. Nelson*, 298 N.C. 573, 260 S.E. 2d 629 (1979); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977). In the present case, Detective Ward was allowed to use the notes he took during his interview with Ms. Freeman in order to aid his recall in testifying as to what she reported to him at that time. The trial court acted properly in instructing the witness not to read from his notes, and defendant has presented no evidence to indicate that the witness misused his notes in any manner. We find defendant's assignment of error without merit.

**[5,6]** Under his assignment of error number nineteen, defendant argues that it was error for the trial court to allow the State to

impeach its own witness. It appears from the record that although Jackie Handsome had been subpoenaed by defendant, she was called by the State as a rebuttal witness. It is within the discretion of the trial judge to permit the State to call and question a witness subpoenaed by defendant, and we find no abuse of that discretion in this case. *State v. Herndon*, 292 N.C. 424, 233 S.E. 2d 557 (1977); *State v. Lancaster*, 202 N.C. 204, 162 S.E. 367 (1932). Jackie Handsome was interviewed by Detective Ward on 25 October 1979, at which time she stated that she was riding with defendant in his automobile during the early morning hours of 21 October 1979. She reported that they stopped beside a girl walking along Highway 158, whereupon defendant asked if she would like a ride, and drove on when the girl refused his offer. Ms. Handsome said she exited the car at a beer joint a few minutes later and did not see defendant again that night. The evidence presented by the State tended to show that at approximately 5:00 p.m. on the day before she was called as a rebuttal witness by the State, Ms. Handsome was again interviewed by Detective Ward and the district attorney, at which time she repeated her previous statement without material change. During her testimony in court the following day, however, she stated that she did not see defendant stop his automobile and offer a ride to a girl walking beside the road. The district attorney claimed surprise at Ms. Handsome's testimony and obtained the trial court's permission to impeach the witness. It is a general rule in this jurisdiction that a party may not impeach his own witness. *State v. Austin*, 299 N.C. 537, 263 S.E. 2d 574 (1980); *State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973). However, when the party calling the witness has been led to believe that the witness will testify in a certain manner, and that party is surprised when the witness fails to testify as expected, the trial judge, in his discretion, may allow the party to impeach its witness. *State v. Austin, supra, State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975). It appears that in the case *sub judice*, the State was surprised by Jackie Handsome's testimony at trial. Consequently, the trial judge did not abuse his discretion in permitting the State to impeach the witness, and defendant's assignment of error is overruled.

[7] We likewise find no merit in defendant's twentieth assignment of error. Under that assignment, defendant claims that the testimony of State's witness Ricky Handsome was offered for the purpose of impeaching the testimony of Jackie Handsome, again in violation of the general rule that a party may not impeach its own

witness. The exception defendant refers to under this assignment relates not to Ricky Handsome's testimony, but to Detective Ward's testimony concerning his interview with Ricky Handsome. Detective Ward reported Mr. Handsome's statement that on the night of the alleged offenses, he was riding with defendant in his car when defendant stopped on Highway 158, offered a white girl a ride, and drove on when she refused. This evidence was not offered for impeachment purposes, but as evidence tending to corroborate Mr. Handsome's testimony concerning his personal observations.

> "The anti-impeachment rule does *not* prevent a party from showing that the facts are otherwise than as testified to by his witness (including a clearly friendly witness), though this has the effect of indirectly impeaching him. This showing may be made 'not only by the testimony of other witnesses, but from other statements of the same witness, and at times from the facts and circumstances of the occurrence itself, the *res gestae*.'" 1 Stansbury's North Carolina Evidence § 40, 116-17 (Brandis Rev. 1973). *See also State v. Pope, supra.*

Mr. Handsome's testimony indicates that he was not present during Detective Ward's interview with Jackie Handsome, and that he was not aware of what she had reported to the detective at that time. His testimony at trial and statements to Detective Ward were thus properly admitted as evidence of his own personal observations.

[8]  By his twenty-third assignment of error, defendant contends that the trial court erred in instructing the jury that the alleged offenses occurred on 20 October 1979, although the warrants for defendant's arrest, the bills of indictment, and all the evidence presented by defendant and the State indicated that the alleged offenses were committed on 21 October 1979. Any objection to an error by the trial judge in summarizing the evidence presented and the contentions of the parties must be brought to the court's attention in time to afford an opportunity for correction; otherwise, they are deemed to have been waived and will not be considered on appeal. *State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980); *State v. White*, 298 N.C. 430, 259 S.E. 2d 281 (1979); *State v. Willard*, 293 N.C. 394, 238 S.E. 2d 509 (1977). There is no indication in the record that defendant brought the trial judge's error in stating the date of the alleged offenses to the attention of the court, therefore we find

that defendant waived his objection. Furthermore, considering the amount of testimony referring to the date of the offense as 21 October 1979, and the trial judge's statement to the jury "that if in my recollection of the evidence I remember any differently from the way you do, then you be guided by what you remember," the jury could not have been misled by the trial court's inadvertence and defendant was not prejudiced thereby. Incidentally, the prosecuting witness' testimony included events which took place on 20 October 1979. Defendant's assignment of error is overruled.

[9,10] Under his assignment of error number twenty-five, defendant argues that the trial court committed error in failing to instruct the jury on kidnapping in the second degree. At the time defendant was tried for and convicted of kidnapping, G.S. 14-39 provided for only one offense of kidnapping. The existence of two different ranges of sentences under G.S. 14-39(b) did not create two separate degrees of the offense of kidnapping, therefore the trial judge did not err in failing to charge the jury on an offense which did not exist. *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978). G.S. 14-39(b) provided that if defendant satisfied the trial judge by a preponderance of the evidence that he released the kidnapping victim in a safe place and that the victim was neither sexually assaulted nor seriously injured, then the trial judge could not impose a sentence upon defendant's conviction of kidnapping of more than twenty-five years. Whether defendant proved these mitigating factors by a preponderance of the evidence was a determination to be made by the trial judge, not the jury. *State v. Williams, supra. See also State v. Barbour*, 278 N.C. 449, 180 S.E. 2d 115 (1971), *cert. denied* 404 U.S. 1023, 92 S.Ct. 699, 30 L. Ed. 2d 673 (1974). In the instant case, the State presented substantial evidence tending to show that the victim, Kathy Freeman, was kidnapped, repeatedly raped by defendant and three other males, and released near her home. Defendant's evidence to the contrary consisted of his own testimony denying participation in the offenses charged and the testimony of several witnesses which tended to show an alibi for defendant at the time the alleged crimes were committed. We find defendant's evidence insufficient to meet his burden to prove the mitigating circumstances set forth in G.S. 14-39(b) by a preponderance of the evidence, hence we hold that the trial judge acted properly within his discretion in sentencing defendant to life imprisonment for kidnapping.

**[11]** Under his twenty-seventh assignment of error, defendant claims that by sentencing him to two terms of life imprisonment, to be served concurrently, the trial court imposed upon him a cruel and unusual punishment and infringed upon his right to equal protection, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Specifically, defendant argues that his constitutional rights were violated because he received a substantially more severe punishment than the other three persons involved in the offenses. A sentence is not cruel or unusual punishment in the constitutional sense so long as it falls within the maximum authorized by statute and the punishment provisions of the statute itself are constitutional. *State v. Atkinson*, 298 N.C. 673, 259 S.E. 2d 858 (1979); *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979); *State v. Williams, supra.* We held above that the trial court's sentence of life imprisonment for kidnapping in this case was authorized by the provisions of G.S. 14-39. Likewise, G.S. 14-21, in effect at the time defendant was sentenced, authorizes a sentence of life imprisonment upon a conviction of first degree rape. Both statutes have been found constitutional by this Court. *State v. Wilson*, 296 N.C. 298, 250 S.E. 2d 621 (1979); *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). A sentence within the maximum limits set by statute does not violate the equal protection clause of the Fourteenth Amendment simply because another person involved in the same offense received a lesser punishment. *State v. Atkinson, supra; State v. Williams, supra.* The sentence defendant received was within the maximum limits set by statute and did not violate his equal protection rights, and defendant's allegations to the contrary are without merit.

We have carefully considered defendant's remaining assignments of error, numbered 3, 4, 5, 6, 8, 9, 10, 11, 12, 13, 15, 16, 17, 18, 21, 22, 24, and 26, and find them without merit. Defendant received a fair trial free from prejudicial error and we find

No error.

Justice MEYER did not participate in the consideration or decision of this case.