STATE OF NEBRASKA, APPELLEE, V.
LARRY W. SCHNECKLOTH, JOHN L. KOGER,
AND NOEL J. HEATHMAN, APPELLANTS.

313 N.W.2d 438

Filed December 11, 1981. Nos. 43712, 43713, 43714.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein for appellants.

Paul L. Douglas, Attorney General, and John Boehm for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

The three separate cases involved in this appeal were consolidated for trial below and have also been consolidated for briefing and argument in this court. The defendants below, Larry W. Schneckloth, John L. Koger, and Noel J. Heathman, were each charged in informations containing three counts with committing the offenses of kidnapping, in violation of Neb. Rev. Stat. § 28-313(1) (Reissue 1979); first degree sexual assault, in violation of Neb. Rev. Stat. § 28-319(1) (Reissue 1979); and using a firearm to commit a felony, in violation of Neb. Rev. Stat. § 28-1205(1) (Reissue 1979). Trial was had to a jury which found all the defendants guilty as charged. The court sentenced all three defendants to terms of life imprisonment for kidnapping, concurrent terms of 8 to 10 years' imprisonment for first degree sexual assault, and consecutive terms of from 3 to 5 years' imprisonment for use of a firearm in the commission of a felony. The defendants were allowed credit for the time each had spent in confinement prior to sentencing. We affirm.

Without going into great detail with reference to the background facts of this case, the record supports the conclusion that the victim was employed as a cashier at the 7-Eleven Store located at 41st and Dodge Streets in Omaha and was working alone during the late evening hours of February 26, 1980, and early morning hours of February 27, 1980. Shortly after 3 a.m. on February 27, 1980, a dark-colored station wagon, occupied by the three defendants, entered into the store parking lot and was parked near the gasoline pumps. According to the victim's testimony, she was abducted at gunpoint by the three defendants, who forced her into the automobile and thereafter sexually assaulted her against her will by performing various types of sex acts upon her during the trip through various sections of the city of Omaha, and over into a park in Council Bluffs, Iowa. In committing the various sexual acts upon her the defendants from

time to time changed their seats and locations in the automobile. Following the foregoing sexual activity, the defendants ordered the victim to get dressed and lie on the back seat. Heathman, who was seated in the back seat, pointed a gun at her when the vehicle was stopped by a police cruiser. She was informed by the defendants that they belonged to a motorcycle group and that if she complained to the police she would be killed. She was subsequently rescued by the Council Bluffs policeman who removed her to one of the police cruisers, at which time she told the police that she had been abducted at gunpoint from the store, sexually molested by the occupants of the car, and threatened with death if she told anyone about the incident. The defendants were then arrested by the police and identified. A further search of the automobile revealed a .38-caliber Smith & Wesson 4-inch-barrel revolver hidden in the springs under the rear seat of the vehicle. The victim was taken to the Council Bluffs Mercy Hospital where physicians at the hospital examined her and conducted laboratory tests on smears obtained from her vaginal and rectal areas. These tests disclosed spermatozoa and high vaginal acid phosphatase, indicating recent sexual intercourse.

The story and testimony on behalf of defendants was different than that given by the victim. The only witnesses testifying for the defendants were the defendants Koger and Heathman. Schneckloth did not testify at the trial. Both Koger and Heathman admitted their presence in Koger's automobile and their sexual activity with the victim during the hours testified to by her. Both, however, denied any forcible abduction of her from the 7-Eleven Store, and contended that the victim had voluntarily consented to have sexual activity with them. They admitted possessing the revolver found in the automobile, but explained that they had used it for target practice during the afternoon of February 26, 1980.

The State then called as a rebuttal witness one

Diane Johnson, who was a security officer employed by Rosen-Novak automobile company. She testified that she was on her patrol route of the Rosen-Novak properties at approximately 2:45 a.m. on February 27, 1980, and she was followed by a station wagon containing three men, which chased her vehicle. The men shouted obscenities, and one of them pointed a gun at her. At one time the station wagon blocked her exit from an alleyway; however, she then called the Omaha police emergency number on her mobile telephone and a short time later the station wagon left the scene. She subsequently indentified the vehicle as bearing the license plate number of defendant Koger's station wagon.

Appellants' sole assignment of error as set out in their brief on appeal is as follows: "The District Court's sentencing of each of the defendants to life imprisonment for kidnapping, rather than the lesser alternative penalty of one-to-fifty years, based only on the Court's own fact findings of the statutory elements required for such higher penalty, violated the defendant's [sic] constitutional and other rights to have the State's informations allege the essential statutory elements required for imposition of the higher penalty, to be informed of the nature and cause of the accusation against them, and to a jury's determination of their guilt by proof beyond a reasonable doubt." In short, appellants contend that § 28-313 defines two separate kidnapping offenses, rather than one offense with two separate penalty provisions; that the information filed by the State against them in these cases failed to allege the essential statutory elements required for the imposition of the higher penalty; and that the District Court erred in sentencing them to life imprisonment on the kidnapping counts rather than the lesser penalty of 1 to 50 years' imprisonment. It is to be noted, however, that the appellants have not appealed from their convictions or sentences pertaining to the sexual assault and use of firearm in the com-

mission of a felony charges.

We commence our discussion with the observation that in Nebraska all crimes are statutory, and no act is criminal unless the Legislature has in express terms declared it to be so. *State v. Gallegos*, 193 Neb. 651, 228 N.W.2d 615 (1975); *State v. Ewert*, 194 Neb. 203, 230 N.W.2d 609 (1975); *State v. Hauck*, 190 Neb. 534, 209 N.W.2d 580 (1973). It is also a fundamental principle of statutory construction that a penal statute is to be strictly construed. *State v. Suhr*, 207 Neb. 553, 300 N.W.2d 25 (1980); *State v. Simants*, 182 Neb. 491, 155 N.W.2d 788 (1968). We have also held: " 'Where the language of a statute is plain and unambiguous, no interpretation is needed and the court is without authority to change the language.' " *State v. Suhr, supra* at 560, 300 N.W.2d at 29. See, also, *State v. Gallegos, supra.* The kidnapping statute involved in this appeal is § 28-313, which became effective January 1, 1979. That statute provides as follows:

"Kidnapping; *penalties.* (1) A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:

(a) Hold him for ransom or reward; or

(b) Use him as a shield or hostage; or

(c) Terrorize him or a third person; or

(d) *Commit a felony;* or

(e) Interfere with the performance of any government or political function.

(2) *Except as provided in subsection (3) of this section, kidnapping is a Class IA felony.*

(3) If the person kidnapped was *voluntarily released* or liberated *alive by the abductor* and in a safe place *without having suffered serious bodily injury,* prior to trial, kidnapping is a Class II felony." (Emphasis supplied.)

In support of their theory that § 28-313 defines two separate kidnapping offenses, rather than one offense with differing penalties, the appellants contend

that to prove Class IA kidnapping, so as to subject them to the punishment of life imprisonment, the State must prove not only the abduction or restraint for one of the purposes designated in the statute but also that the kidnapped person was *not* voluntarily released or liberated alive by the abductor *and* in a safe place without having suffered serious bodily injury prior to trial. They contend that the informations filed against them in these cases were defective inasmuch as they contain no language whatsoever with reference to the victim being released or liberated alive in a safe place without having suffered serious bodily injury prior to trial, and that these are essential elements of the crime of kidnapping in this state which must be specifically alleged. They deny that these are merely mitigating factors in the determination of which penalty should be imposed under the particular facts of the case.

Although § 28-313, so far as we have been able to ascertain, has not been interpreted by prior decisions of this court, we are unable to accept appellants' arguments and characterization of the Nebraska kidnapping statute. The factors listed in subsection (3) are not elements of the offense of kidnapping, but are simply mitigating factors which may reduce the sentence of those charged under § 28-313(1) if they are applicable. While there is some authority from other jurisdictions supporting the position of the appellants, a review of the case law convinces us that the cases supporting the view taken by the appellee, the State of Nebraska, in this case not only represent the weight of authority in the country but also are supported by the better reasoning.

In support of their position, the appellants rely principally upon the cases of *State v. Goodwin*, 118 N.H. 862, 395 A.2d 1234 (1978), and *State v. Sewell*, 342 So. 2d 156 (La. 1977). It is true that in *State v. Goodwin, supra,* the court did state the rule to be that in determining whether a felonious sexual assault

victim has suffered sufficient serious bodily injury to make accompanying kidnapping a Class A felony, the seriousness of the injury must be presented to the jury, as would evidence of any other element of crime. In its opinion the court stated at 869, 395 A.2d at 1238: "Although the jury was not instructed on the elements of felony A kidnapping, the judge decided on his own at the time of sentencing that the evidence supported a conviction for felony A kidnapping. This fact-finding was improper; it invaded the domain of the jury." This case does, in fact, appear to support the arguments and contentions of the appellants in this case, as does also the subsequent case from the same jurisdiction, *State v. Champagne*, 119 N.H. 118, 399 A.2d 287 (1979). Also in support of their contentions in this regard, the appellants cite the case of *State v. Sewell, supra,* which, however, involved an "aggravated kidnapping" statute. In that case the court stated that the aggravated kidnapping statute defines two separate offenses consisting of a capital offense in which the kidnapped person is not liberated unharmed before sentencing, and a noncapital offense in which the sentence of death cannot be given but an offender must be sentenced to life imprisonment at hard labor when the kidnapped person is liberated unharmed prior to sentencing. Our review of *Sewell* convinces us that the two cases are distinguishable, and that the Louisiana statute clearly defines two separate offenses while the Nebraska statute does not. Under the Louisiana statute, specifically designated as an "aggravated kidnapping" statute, it is only required, to invoke the lesser penalty under that statute, that the kidnapping victim be "liberated unharmed." Under the Nebraska statute, however, it is required that the "abductors" have voluntarily released or liberated alive the kidnapping victim before the lesser penalty can be invoked. In this case the evidence clearly establishes that the victim was rescued from the appellants by the police officers after they had stopped

the defendant Koger's vehicle, and she was not released by action of the "abductors." In addition, she was subjected to repeated first degree sexual assaults, which acts are generally held to be sufficient to constitute "serious bodily injury." See Annot., What Is "Harm" Within Provisions of Statutes Increasing Penalty for Kidnapping Where Victim Suffers Harm, 11 A.L.R.3d 1053 (1967).

On the contrary, the position contended for by the appellee is supported by the U.S. Supreme Court in its opinion in *Smith v. United States*, 360 U.S. 1, 79 S. Ct. 991, 3 L. Ed. 2d 1041 (1959). In that case, the U.S. Supreme Court determined that the Federal Kidnapping Act, 18 U.S.C. § 1201 (1959), created the single offense of transporting a kidnapping victim across state lines. The statute under which the petitioner was convicted provided in part: "(a) Whoever knowingly transports in interstate . . . commerce, any person who has been unlawfully . . . kidnapped . . . shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed."

In its opinion, the Supreme Court stated at 360 U.S. 7-8: "It has been held by two Courts of Appeals that indictments similar in terms to the charge here were sufficient to support capital punishments despite the absence of allegations that the kidnapping victims were released harmed. *United States v. Parrino*, 180 F.2d 613, *Robinson v. United States*, 114 F.2d 392. Cf. *United States v. Parker*, 103 F.2d 857. Petitioner contends that these holdings dispose of his case because they make clear that the statute creates a single offense of kidnapping which *may* be punished by death if the prosecution, at trial, shows that the victim was released in a harmed condition. The Government claims, however, that whether a specific kidnapping constitutes a capital offense requires

examination of the evidence to determine whether the victim was released harmed or unharmed; in other words, that the statute creates two offenses: kidnapping without harm, which is punishable by a term of years, and kidnapping with harm, which is punishable by death. Further, the Government contends that the mere filing of an information by the United States Attorney eliminated the capital element of the crime.

"The Courts of Appeals which have been concerned with the statute have uniformly construed it to create the single offense of transporting a kidnapping victim across state lines. We agree with this construction. Under the statute, that offense is punishable by death if certain proof is introduced at trial. When an accused is charged, as here, with transporting a kidnapping victim across state lines, he is charged and will be tried for an offense which *may* be punished by death. Although the imposition of that penalty will depend on whether sufficient proof of harm is introduced during the trial, that circumstance does not alter the fact that the offense itself is one which *may* be punished by death and thus must be prosecuted by indictment. In other words, when the offense as charged is sufficiently broad to justify a capital verdict, the trial must proceed on that basis, even though the evidence later establishes that such a verdict cannot be sustained because the victim was released unharmed. It is neither procedurally correct nor practical to await the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense."

In *Robinson v. United States*, 144 F.2d 392 (6th Cir. 1944), the Court of Appeals held that the allegation in the indictment that the defendant did not liberate the victim unharmed was not an essential part of the offense charged, rather, that it merely furnished the basis for proof of the extent to which the offense was aggravated. "We again point out that the phrase 'and did not liberate her unharmed' did not state an

essential part of the offense charged. Appellant might have been convicted without any showing that Mrs. Stoll was liberated at all; or, if she was, whether she was set free either sound or unsound, in mind or body. The punishment provided by the statute varied from imprisonment from one year to life, in the discretion of the court, or to a death sentence 'if the verdict of the jury should so recommend,' and in determining whether it would recommend capital punishment, the jury was entitled to know from the evidence to what extent aggravation was involved. It was for this reason, no doubt, that the phrase 'provided that the sentence of death shall not be imposed by the court if, prior to its imposition, the kidnaped person has been liberated unharmed' was incorporated in both the statute and the indictment. It furnishes a basis for proof as to what extent the offense was aggravated." 144 F.2d at 397.

In *Pyles v. Boles*, 148 W. Va. 465, 135 S.E.2d 692 (1964), the Supreme Court of Appeals held that the West Virginia statute which defines the offense of kidnapping created a single capital offense and not three separate offenses, even though it provided for varying punishment depending on the treatment accorded the victim. The court held that an indictment which charged kidnapping was sufficient, although no reference was made therein to the punishment sought or to the treatment accorded the victim. "It is significant that the provisions of the statute of this State dealing with punishments of not less than twenty years and not less than ten years state that 'in all cases where the person against whom *the offense* is committed is returned, or is permitted to return, alive, without serious bodily harm having been inflicted upon him,' the punishment shall be for those respective periods of not less than twenty and ten years. This language indicates clearly that the Legislature, in enacting the kidnapping statute, intended to create and did create one single offense with different punish-

ments dependent upon and determined by the manner in which it is committed and that the statute did not create two or more separate and distinct offenses. . . .

. . . .

"The provisions of the statute relating to the various punishments to be imposed upon a person convicted of the offense of kidnapping and which punishments depend upon and are governed by the evidence introduced at the trial, do not state or prescribe any element of the offense created by the statute." 148 W. Va. at 476-79, 135 S.E.2d at 699-701.

We concur with the statements of the West Virginia Supreme Court, and note that the Nebraska statute is similar in its operation in that it establishes the offense of kidnapping in subsection (1) by listing the elements of the offense. Subsection (2) sets forth that the basic penalty for kidnapping is life imprisonment, but subsection (3) provides that in the event of certain mitigating factors the sentence may be reduced to a term of years, ranging from a minimum imprisonment of 1 year to a maximum of 50 years. In this regard, we note that all felonies in Nebraska have been divided into six classes by the new Nebraska Criminal Code (Neb. Rev. Stat. § 28-105 (Reissue 1979)), and that such classification of felonies has been made for the purpose of providing penalty guidelines which may be imposed upon conviction of a given offense.

One of the best general discussions of the issues presented to us in this appeal is found in the recent case of *State v. Williams*, 295 N.C. 655, 249 S.E.2d 709 (1978), and we quote rather fully from certain pertinent portions of that opinion. In *Williams* the Supreme Court of North Carolina discussed at some length that state's kidnapping statute, which to all intents and purposes is very similar to that of Nebraska's. In *Williams* the court held that the existence of two different ranges of sentences under their kidnapping statute (N.C. Gen. Stat. § 14-39(a)(b)

(Cum. Supp. 1979)) should not be read as creating two separate offenses of simple kidnapping and aggravated kidnapping; that the kidnapping statute, by its terms, presupposes a conviction for kidnapping, the elements of which are set forth therein; that it does not purport to add or subtract elements of the offense, but, rather, speaks merely to matters which may be shown in mitigation of punishment. In its opinion, the court stated as follows at 667-74, 249 S.E.2d at 717-22:

"Different policy considerations are involved in G.S. 14-39. It follows the pattern of the kidnapping provision, § 212.1, of the Model Penal Code, which contains a qualifying provision providing for reduced punishment in kidnapping cases if the victim is 'released alive in a safe place prior to trial.' The drafters of the Model Penal Code stated that the purpose of this provision is to 'maximize the kidnapper's incentive to return the victim alive.' Model Penal Code, Tentative Draft No. 11, § 212.1, at 19 (1960). It is reasonable to assume that the General Assembly had a similar purpose in providing reduced punishment under G.S. 14-39(b) when the victim has been released in a safe place and has not been sexually assaulted or seriously injured. Unlike 18 U.S.C. §§ 2113(d) and 924(c), which seek to deter the introduction of a dangerous element in the commission of felonies, G.S. 14-39(b) seeks to reduce the possibility of harm to a victim who is in an already dangerous situation. In other words, it is intended to offer a kidnapper the inducement of a lesser sentence if he refrains from injuring or per-mitting injury to his victim.

"This purpose points to the key distinction between G.S. 14-39(b) and a statute like 18 U.S.C. § 2113(d). Rather than being sentence-enhancing, the factors set forth in G.S. 14-39(b) are sentence-reducing in nature. In subsection (a) of the statute, the General Assembly defines the crime of kidnapping. In the first sentence of subsection (b), it provides the punishment for *this* crime as imprisonment for not less than 25 years nor

more than life. It then lists various factors, the presence of which will result in a reduced sentence.

"The General Assembly has determined that kidnapping is a serious crime and has set punishment at a term of imprisonment of not less than 25 years nor more than life. Out of concern for the safety of kidnapping victims, however, the General Assembly has set forth certain factors that can result in mitigation of sentence. If a defendant can show that the victim of the crime was released in a safe place and was not sexually assaulted or seriously injured, then he cannot be imprisoned for more than 25 years. These factors are not elements of a crime; nor are they sentence-enhancing in nature. They can, if shown, result only in a lesser sentence for a defendant. They are in this respect like any other mitigating circumstance or true affirmative defenses, *see, e.g., Patterson v. New York*, 432 U.S. 197 [97 S. Ct. 2319, 53 L. Ed. 2d 281] (1977) ("extreme emotional disturbance"); *State v. Caldwell*, 293 N.C. 336, 237 S.E.2d 742 (1977), *cert. denied*, [434] U.S. [1075], [98 S. Ct. 1264] 55 L. Ed. 2d 780 (1978) (insanity); *Rivera v. Delaware*, 351 A. 2d 561, *app. denied*, 429 U.S. 877 [97 S. Ct. 226, 50 L. Ed. 2d 160] (1976) (insanity), that defendants may take advantage of to reduce or obviate their criminal liability. When the same or similar evidence tends both to show their absence and to prove the commission of some other crime, subjecting a defendant to punishment for the other crime while not reducing his punishment for kidnapping does not offend either the Double Jeopardy or the Law of the Land Clauses.

. . . .

"While not necessary to the decision in this case, we think it desirable to set forth for the guidance of bench and bar procedures which should be followed in applying our interpretation of the kidnapping statute. Normally a jury need only determine whether a defendant has committed the substantive offense of kidnapping as defined in G.S. 14-39(a). The factors

set forth in subsection (b) relate only to sentencing; therefore, their existence or non-existence should properly be determined by the trial judge.

"The judge may make such a determination from evidence adduced at the trial of the kidnapping case itself or at the sentencing hearing provided for in G.S. 15A-1334 following the trial, or at both proceedings. If at either or both proceedings evidence of the existence of the mitigating factors has been presented, the judge must consider this and all other evidence bearing on the question. If the judge is satisfied by a preponderance of the evidence, the burden being upon the defendant to so satisfy him, that the kidnapping victim was released in a safe place and was neither sexually assaulted nor seriously injured, he shall so find and may not then impose a sentence on the kidnapping conviction of more than 25 years or a fine of up to $10,000, or both. If the judge is not so satisfied, he must so state on the record in which case he may impose a sentence of not less than 25 years nor more than life imprisonment. If no evidence either at trial or at the sentencing hearing is adduced tending to show the existence of the mitigating factors then the judge, without making findings, may proceed to impose a sentence of not less than 25 years nor more than life imprisonment.

"In any case the state may stipulate to the presence of all the mitigating factors and thereby avoid determination of the question.

"The procedure here outlined comports with both state and federal constitutional requirements. The procedures prescribed for the sentencing hearing in G.S. 15A-1334(b) accord due process. That the judge rather than the jury makes the crucial factual determinations upon which the ultimate sentence is based does not contravene either state or federal constitutional guarantees of a jury trial in criminal cases. Neither is it violative of constitutional due process to place the burden of persuasion as to the existence of the

mitigating factors on the defendant.

. . . .

"Since the factors to be found here relate solely to the severity of the sentence and not to any element of the offense itself, defendant is not entitled to a jury determination under either the federal or state constitution. In part, we base this conclusion on the fact that matters having to do with severity of sentence within the range authorized by statute for a given offense have been traditionally determined by judges. *See Williams v. New York, supra; State v. Pope, supra.* When, however, a statute, such as the kidnapping statute under consideration, establishes two ranges of sentences and makes their imposition dependent on the presence or absence of additional facts the question of defendant's entitlement to a jury determination of these facts is more difficult. Our conclusion that there is no such entitlement here is bolstered by the proposition that the factors are mitigating rather than enhancing. By statute in North Carolina factors which enhance the punishment are generally made elements of an offense and must be alleged and proved to a jury. General Statute 15A-928, for example, requires this procedure '[w]hen the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter. . . .' The same requirements prevail under our Habitual Felon Act, G.S. 14-7.1, *et seq. State v. Allen,* 292 N.C. 431, 233 S.E.2d 585 (1977).

"Most courts have, however, sustained against constitutional attack statutory procedures for sentence enhancement even when the enhancing factors are determined by the judge sitting without a jury following conviction of the primary offense. For example, the Federal Dangerous Special Offender Act, 18 U.S.C. § 3575, provides for an increased sentence if a convicted felon is later found by the judge to be a dangerous special offender, the definitions of which are

set out in the Act. This procedure has been upheld by a majority of federal circuit courts against the contention, among others, that defendant is entitled to a jury trial on the question whether he is a dangerous special offender. *United States v. Williamson,* 567 F.2d 610 (4th Cir. 1977); *United States v. Bowdach,* 561 F.2d 1160 (5th Cir. 1977); *United States v. Stewart,* 531 F.2d 326 (6th Cir.) *cert. denied,* 426 U.S. 922, [96 S. Ct. 2629, 49 L. Ed. 2d 376] (1976); *but cf. United States v. Neary,* 552 F.2d 1184 (7th Cir.), *cert. denied,* 434 U.S. 864 [98 S. Ct. 197, 54 L. Ed. 2d 139] (1977) (raising but not resolving constitutional questions). A majority of state courts have, likewise, upheld similar recidivist type statutes under which the trial judge determines whether a convicted felon is indeed a recidivist for purposes of enhancing the penalty under these statutes. *See, e.g., Howard v. State,* 83 Nev. 53, 422 P.2d 548 (1967); *State v. Hoffman,* 236 Or. 98, 385 P.2d 741 (1963), and cases cited therein; *State v. Guidry,* 169 La. 215, 124 So. 832 (1929). *See also,* Note, The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, 89 Harv. L. Rev. 356 (1975); Note, Recidivist Procedures, 40 N.Y.U. L. Rev. 332 (1965). *A fortiori* factors which are mitigating in nature may constitutionally be determined by the sentencing judge." See, also *State v. Squire,* 302 N.C. 112, 273 S.E.2d 688 (1981); *State v. Bright,* 301 N.C. 243, 271 S.E.2d 368 (1980); *State v. Taylor,* 301 N.C. 164, 270 S.E.2d 49 (1980).

We believe that all of the issues raised by the appellants in this appeal have been effectively answered in the authorities above quoted. All of the elements of the crime of kidnapping as set forth in subsection (1) of § 28-313 were alleged in the information and proved by the prosecution. Since the mitigating factors contained in subsection (3) are not elements of the crime, they do not need to be alleged and proven, nor, for that matter, need their absence be alleged and proven. The requirement in Nebraska is only that

the information must state expressly and directly each fact that is an essential element of the crime intended to be charged. *State v. Scott*, 206 Neb. 451, 293 N.W.2d 114 (1980).

The Nebraska kidnapping statute provides in subsection (1) that a person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with the intent to perform certain acts; in this case, to commit a felony. Subsection (2) of the act provides: *"Except as provided in subsection (3) of this section, kidnapping is a Class IA felony."* (Emphasis supplied.) This clearly reinforces our conclusion that the provisions of subsection (3) are only mitigating circumstances which may reduce the penalty and make the offense punishable as a Class II felony rather than a Class IA felony. The mitigating circumstances set out in subsection (3) of § 28-313 were clearly not even present under the facts of the instant case, as the victim was released by the action of the police rather than by the voluntary act or acts of the abductors. The existence or nonexistence of the mitigating factors was a matter properly considered by the court at sentencing. We conclude, therefore, that the convictions and sentences of the appellants in the District Court must be and hereby are affirmed.

AFFIRMED.

BOSLAUGH, J., concurs in the result.